[L. A. No. 6116. In Bank.—June 11, 1921.]

G. BESSHO et al., Respondents, v. GENERAL PETROLEUM CORPORATION (a Corporation), et al., Appellants.

[1] LANDLORD AND TENANT—PRIOR UNRECORDED LEASE—RIGHTS OF SUBSEQUENT LESSEE—NOTICE.—A subsequent lessee of premises in good faith and for a valuable consideration and without notice, either actual or constructive, of the rights or claims of persons holding a prior unrecorded lease of the same premises takes the same free of such prior rights or claims, except that if the prior lessee has gone into actual possession, such possession may operate to put the subsequent lessee upon notice or inquiry.

[2] ID.—POSSESSION UNDER PRIOR UNRECORDED LEASE—CULTIVATION
OF LARGER PORTION OF PREMISES—NOTICE TO SUBSEQUENT LESSEE
AND ASSIGNEE.—In this action by lessees to recover damages for
the destruction by the assignee of a subsequent lessee of certain
nursery stock being grown by the plaintiffs upon all the land,
except a small portion reserved from the lease upon which the
lessor resided, the evidence is held sufficient to support the im-
plied finding of the jury that plaintiffs' possession was of such
a character as to serve to put the subsequent lessee and his
assignee upon notice that it was a different possession from that
of the lessor and to charge them with notice of the plaintiffs'
claim under their prior unrecorded lease.

[3] ID.—PAYMENT FOR DAMAGE—PROVISION OF LEASE—RESPONSIBILITY
OF SUBSEQUENT LESSEE REGARDLESS OF NOTICE.—A subsequent
lessee and his assignee is responsible to prior lessees for dam-
age done by such assignee to the crops of the prior lessees being
grown by them upon the demised premises, regardless of whether
the subsequent lessee took his lease with or without notice of the
prior lease, where in his lease he agreed to pay for any injury
done to the trees, fruits, or other crops of the lessor.

[4] ID.—LEASE OF PROPERTY OF WARDS—EXECUTION BY GUARDIAN IN
PERSONAL CAPACITY—VALID LEASE.—A lease by a guardian of
property belonging to her wards is valid although signed by her
only in her personal capacity and not as guardian.

[5] ID.—LEASE BY ONE TENANT IN COMMON—RATIFICATION.—A lease
of an entire tract made by one tenant in common is binding on
the other tenants when ratified by them, and one method of
ratification is the acceptance of benefits under the lease by the
cotenants.

[6] ID.—ACCOUNTING BY GUARDIAN—ASSENT TO LEASE BY ONE OF
WARDS—RATIFICATION.—A lease by a guardian of property which
she and her wards owned as tenants in common made by her in
her personal capacity must be held to have been ratified by the
wards where she accounted to the court for the proceeds from
the property and one of the wards, an adult, expressly assented
to the lease.

[7] ID.—LIABILITY OF LESSOR—MEASURE OF DAMAGES.—Where a lessor
is jointly liable to lessees for destruction of crops of plaintiffs
by the assignee of a subsequent lessee, the measure of damages,
in the absence of a claim of liability based upon a breach of
the covenant of quiet enjoyment, is not the amount of the pro-

---

4. Power of guardian to lease ward's realty, note, **Ann. Cas. 1917A,**
1256.

5. Effect of lease by part only of tenants in common, note, **Ann. Cas.**
1913D, 1164.

portion of the rent paid to her by the plaintiffs from the time of damage to the termination of the lease.

[8] ID.—PLEADING—COMPLAINT—STATEMENT OF SINGLE CAUSE OF ACTION.—A complaint in an action by a lessee against the lessor and a subsequent lessee alleging that the latter, with the previous knowledge, authorization, consent, and co-operation of the lessor, wrongfully proceeded to construct on the demised premises an oil-well derrick and destroyed plaintiff's nursery stock, states but a cause of action for injury to property.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Weil, Fredericks & Hanna, J. H. Ardis and W. S. Knott for Appellants.

Evans & Pearce, Evans, Abbott & Pearce and W. E. Evans for Respondents.

LAWLOR, J.—We hereby adopt the following from the opinion of the district court of appeal of the first appellate district as correctly stating the facts:

"This is an appeal from a judgment in favor of the plaintiffs in an action to recover damages for the destruction of certain flowers and rose-cuttings being grown by said plaintiffs upon a certain tract of land consisting of about five acres owned by the defendant Sarah E. Ralph and her five children as tenants in common, which lands had been made the subject of two leases, under the first of which the plaintiffs claimed the right to the exclusive possession and use of said property, and under the second of which the other defendant, General Petroleum Corporation, had entered upon said premises for the purpose of boring for oil, and had thereby caused the damage to their flowers and rose-cuttings of which the plaintiffs complain.

"The facts attending the making of these two leases are the following: On November 5, 1915, Sarah E. Ralph, as lessor, gave to the plaintiffs herein a written lease of said premises for a period of three years in the usual form of such leases, containing a covenant of quiet enjoyment. The said lessor, while purporting by the terms of said lease to let to said plaintiffs the whole of said premises, signed the

same in her own right only, and did not purport to execute the same as guardian of her children who collectively owned an undivided one-half interest in said property, although at the time of the making of said lease she was such guardian and resided with said children in a dwelling-house upon one corner of said premises, the use of which with the outbuildings and a small orchard immediately surrounding the dwelling-house was excepted from the provisions of said lease. The plaintiffs as lessees under said lease began the propagation of flowers, particularly of rose-cuttings, upon the remaining portion of said land, and while they were cultivating the same were given permission to use one of the small outbuildings otherwise reserved to the lessor. They did not, however, record their lease. While they were thus engaged in using the land for the purposes above stated one L. A. McCray approached the said Sarah E. Ralph with a proposition to take a lease of the same premises for the purpose of prospecting for oil, and on November 10, 1917, the said Sarah E. Ralph and all of her children joined in the execution of a second lease to said L. A. McCray for the period of five years from the date thereof. This lease when obtained by said McCray was immediately transferred and assigned by him to the defendant General Petroleum Corporation and was recorded by the latter on February 4, 1918. On February 9, 1918, the said General Petroleum Corporation entered upon said premises and proceeded to explore the same for oil, in the course of which they worked the destruction of the plaintiffs' flowers and rose-cuttings, in consequence of which this suit was brought by the plaintiffs both against the General Petroleum Corporation, who had immediately worked such destruction, and against said Sarah E. Ralph, as one of the makers of said second lease. Upon a trial of the cause the plaintiffs recovered a judgment against both of said defendants for the sum of one thousand five hundred dollars damages for the destruction of their said property, and from such judgment this appeal on behalf of both of said defendants has been taken.

"The contention of the appellant, General Petroleum Corporation, upon this appeal, is that the said L. A. McCray was a lessee in good faith and for a valuable consideration of the premises in question without notice, actual or constructive, of the rights or claims of the respondents herein

under their prior but unrecorded lease; and that the said appellant having purchased from said McCray said lease for a valuable consideration and without notice, either actual or constructive, of any prior rights or claims of the respondents herein, and having duly recorded said lease prior to its entry upon the said premises, became entitled thereby to a priority of right to the possession and use of said premises as against any prior claims of the plaintiffs therein.

"The validity of this contention depends upon whether the possession which the said plaintiffs had of said premises at the time of the execution of said second lease to said McCray and of its assignment to said appellant was such as to put said McCray and his assignees of said lease upon notice or inquiry as to the rights of said plaintiffs in the premises.

[1] "It is conceded at the outset of this discussion that the subsequent purchaser or lessee of premises in good faith and for a valuable consideration and without notice, either actual or constructive, of the rights or claims of persons holding a prior unrecorded lease or deed of the same premises take the same free of such prior rights or claims. The exception to this rule is this: that if the prior grantee or lessee of the premises under an unrecorded deed or lease has gone into actual possession of the same, such possession may operate to put subsequent purchasers or lessees of the premises upon notice or inquiry as to their prior rights or claims thereunder. The respondents herein contend that their possession of the premises in question was of such a character as to impart notice to both said McCray and to the General Petroleum Corporation, its agents and officials, as to their prior rights and claims, or at least to put them upon inquiry as to the basis of right or claim behind the said plaintiffs' possession. The said appellant, on the other hand, contends that the said plaintiffs' possession was not of that character, and that the mere fact that said plaintiffs were engaged in cultivating the premises in question, upon a portion of which the owners of the premises resided, was not such actual, open, notorious, and exclusive possession thereof as would serve to put either its assignor or itself upon notice or inquiry as to the plaintiffs' claim of right therein based upon their prior unrecorded lease."

[2] 1. We are of the opinion that the evidence is sufficient to support the implied finding of the jury that respondents' possession was of such a character as to serve to put McCray, the original lessee of the second lease, upon notice or inquiry as to the character of respondents' claim. Whatever operated as notice to him also served as notice to his assignee, the oil corporation, which occupies the same position as the original lessee.

According to the evidence, appellant Mrs. Sarah E. Ralph, whose true name is Mrs. Lovada E. Ralph, had leased the land to respondents two years before the alleged wrongful acts were committed. ' She testified: "Mr. Bessho worked there all the time after I made the lease with him in 1915 and he had stuff growing there all the time." Respondent Bessho testified he planted the carnations two years previously, which would be about April, 1916, or eighteen months before McCray secured the second lease. He further testified he had the property under cultivation ever since he leased it, and raised, among other things, strawberries; that he had set out most of the sweet peas in September, 1917, two months prior to the execution of the second lease. It thus appears there were flowers growing on the premises when the second lease was made. They were planted in long beds and rows, which method of cultivation might suggest to one observing the property that they were raised for the market. The area which the respondents cultivated was apart from the portion occupied by Mrs. Ralph. McCray testified: "I first saw the land several months before the lease was made. I was just driving along the road. . . . I was out there within a couple of weeks of the time that I got the lease. . . . The property adjoins the road that I traveled on. You could see the property from the road. I never noticed that there was anything growing on it, and never noticed anyone working on it. I supposed Mrs. Ralph was the owner, and that was all there was to it. . . . And when I passed along the road adjoining this lot before I got this lease I probably could have seen anything that was growing on the lot. I did not make any inquiry as to whether or not anyone was working on the lot."

The oil corporation cites a number of authorities to the proposition that possession, to serve as constructive notice to a future lessee or purchaser, must be open, notorious, and

visible; that it must indicate the occupant. Among these authorities is *Randall* v. *Allen,* 180 Cal. 298, [180 Pac. 941], in which it was said: "If, for instance, the land is a part of a larger tract, all of which is unenclosed, and one not the owner enters upon the particular piece under color of title and cultivates it in the same manner as the adjoining portions of the tract, there is a possession adverse to the real owner which if continued for the statutory period will ripen into title. But such possession will not constitute notice to a prospective purchaser of latent equities or of rights claimed under some unrecorded instrument." The same case quotes the following from *Cox* v. *Devinney,* 65 N. J. L. 389, [47 Atl. 569] : "The fact that the lands are under cultivation does not, of itself, suggest that anyone other than the reputed owner of the premises is in possession of them. In order to charge a purchaser with notice, the occupation must be of a character which would put a prudent person upon inquiry; it must indicate that someone other than he who appears by the record to be the owner has rights in the premises. (*Coleman* v. *Barklew,* 3 Dutch. (N. J. L.) 357.)" These authorities correctly state the rule, but the facts herein do not come within its operation.

*Randall* v. *Allen, supra,* has reference to a situation where the occupier of a part of a tract cultivates it in the same manner as does the occupier of the remainder. In *Cox* v. *Devinney, supra,* the one occupant claimed that his possession, which consisted merely of cultivation, was sufficient to constitute notice. In the case at bar Mrs. Ralph was living with the children on the property reserved from the demised premises, the respondents living a short distance away. The leased land was, from about April, 1916, continuously up to the time of the trial, used for the production of flowers in large quantities. Mrs. Ralph had also reserved the fruit from the orchard. There was no similarity in the manner of the use of the respective holdings. An additional circumstance is the fact that one part was occupied by an American family and the other by Orientals. It cannot be doubted that under the circumstances shown the possession indicated the occupant to such an extent that a prospective lessee would be put upon inquiry.

McCray stated he never noticed there was anything growing on the land, or that anyone was working on it; that he

supposed Mrs. Ralph was the owner ''and that was all there was to it.'' However, the question is not whether he actually noticed anything growing, but whether this particular possession was sufficient to constitute constructive notice to him; whether it would put a prudent man·upon inquiry.

In *Scheerer* v. *Cuddy,* 85 Cal. 270, [24 Pac. 713], the property was an office building. The owner leased some of the rooms to a lodge. These rooms were kept locked. The purchaser assumed the lodge-rooms were vacant. The court, in holding that the purchaser was to be charged with notice of the lessee's possession, said: ''It was his duty to know who was in possession of the property before making the purchase, and his purchase without ascertaining the fact must be regarded as the strongest evidence of bad faith on his part. The burden of making the proper inquiry was cast upon him by the mere fact of actual possession on the part of the appellant. If it were allowed that by failure to acquaint himself with the fact of possession on the part of another than the vendor, the vendee could avoid the effect of the rule above stated, he could purposely avoid any inquiry on the subject, and thereby evade the rule and its consequences entirely.''

In view of all the facts it cannot be maintained there is not sufficient evidence to support the implied finding of the jury that McCray was, under the circumstances, to be charged with notice of respondents' possession.

[3]   We may add, however, that it seems quite plain that the oil corporation is responsible, regardless of whether McCray took the lease with or without notice of the prior lease to the respondents. Plainly, the oil corporation was responsible for the damage it did unless when it took and paid for its lease it did so in the belief that it would not be responsible for damage done by its operations to the vegetation and plants upon the land. Only in case it had that belief could it be protected as a *bona fide* purchaser against liability for such damage. If it did not have that belief, it was not a *bona fide* purchaser as to such liability. That the oil corporation did not have any such belief appears beyond denial from the fact that in its lease it agreed to pay for any injury done to the trees, fruits, or other crops of the lessor. The fact that the agreement extends only to trees, fruits, or other crops of the lessor is wholly immaterial.

It would be material if the recovery sought were upon this provision of the lease. But the recovery sought is not on the lease, but on the ground that the oil corporation tortiously injured the property of the respondents. The only possible defense to a recovery on that ground was that the oil corporation took its lease as a *bona fide* purchaser with the belief that as lessee it had the right to injure crops upon the land without paying compensation. But the provision of the lease mentioned directly negatives any such belief.

[4]   2. The point is made by the oil corporation that the lease from Mrs. Ralph to respondents is void, because while the other tenants in common were parties to the second lease they were not to the first. In the case of *Whyler* v. *Van Tiger,* 2 Cal. Unrep. 800, [14 Pac. 846], a woman who had been appointed guardian of a minor made a lease of a parcel of the ward's land in her own name. She had never taken the oath of office and letters of guardianship were never issued to her. It was claimed the lease was invalid because she had not executed it as guardian, but the court held the lease valid, and that it gave the lessee the right to the premises against one claiming under the ward. In the case at bar Mrs. Ralph was the duly appointed guardian of the minor children. Under such circumstances, a lease made by her of the property of the wards would be valid though signed by her only in her personal capacity, and not as guardian.

[5]   The proposition is clear that a lease of an entire tract made by one tenant in common is binding on the other tenants when ratified by them, and one method of ratification is the acceptance of benefits under the lease by the cotenants. In the case of *Schwartz* v. *McQuaid,* 214 Ill. 357, [105 Am. St. Rep. 112, 73 N. E. 582], it was held that where a lease was made of the whole premises by one cotenant, and the lessee went into possession and paid rent under the lease for some time, it would be presumed, in the absence of proof to the contrary, that the lease was made with the knowledge and consent of the cotenants, and in that case the lessee was held liable on the lease.

[6]   The evidence shows Mrs. Ralph accounted to the court for the proceeds from the land, and that one of the children, an adult, expressly assented to the lease to the respondents. In such a situation the first lease must

be held to be ratified and binding, even though the wards were parties to the second lease and not to the first.

3. We shall next consider the points specially made on behalf of Mrs. Ralph. The first of these is that there is no evidence to support the implied finding of the jury that she is jointly liable for the destruction of respondents' property. The evidence shows that Mrs. Ralph, with a full knowledge of all the facts, gave the oil corporation the second lease, thereby putting it in a position to injure the respondents. J. W. Madrill, head of the land department of the oil corporation, testified that on several occasions just after February 1st he talked with Mrs. Ralph. She said there would be some "damage to the sweet peas or something else, that you would have to look after." F. Chappellet, field manager, who was listening, stated that "Mr. Madrill would undoubtedly take care of whatever was right." On February 9th, when the machinery was moved on the land, Mrs. Ralph, according to the testimony of Mrs. Bessho, told her "not to worry about it, and that they would pay everything. Mrs. Ralph said repeatedly that oil company will pay everything, so don't worry about it." The jury may have inferred from this that Mrs. Ralph gave encouragement to the entry and that from this and all the other circumstances, including the fact of the making of the second lease, the conduct of Mrs. Ralph amounted to more than a passive permission on her part to the commission of the tort, but amounted to co-operation. This would render her jointly liable to respondents.

This also disposes of her further contention that the court erred in refusing her motion for a nonsuit.

[7] The next point is that her acts did not constitute a breach of the covenant of quiet enjoyment, and that even if an eviction and consequent breach of covenant were found, the damages assessed against her cannot exceed the amount of the proportion of the rent paid to her by the respondents from the time of the damage to the termination of the lease. The complaint does not allege, nor do respondents claim, she is liable for a breach of the covenant of quiet enjoyment. This difference in rent, therefore, is not the proper measure of damages.

[8] It is urged that the demurrer on the ground of misjoinder of causes of action—one arising out of a breach

of covenant being joined with one arising out of a tort—should have been sustained. The allegation in the complaint is that the oil corporation "with the previous knowledge, authorization, consent, and co-operation of the said Sarah E. Ralph wrongfully . . . proceeded to . . . construct on said property an oil well derrick . . . and destroyed plaintiffs' nursery stock." Neither in this allegation, nor in any other, is relief sought on the ground of a breach of covenant. There is but one cause of action stated and that is for the injury to the property.

Judgment affirmed.

Olney, J., Wilbur, J., Angellotti, C. J., and Sloane, J., concurred.

SHAW, J., Concurring.—I concur in the judgment upon the ground that the evidence is sufficient to show that the possession and use by Bessho of all of the five acres not used in connection with the house was of such a character that it would indicate to an ordinary observer that it was not used in connection with the occupation of the house as a dwelling, but was held in possession for purposes distinct, different, and separate from the possession of the person occupying the house and yard, and hence, that it was sufficient to put the lessee on notice that it was held in a different ownership.

Lennon, J., concurred.