[L. A. No. 6824. In Bank.—February 24, 1923.]

SAMUEL J. KEESE et al., Respondents, v. VOLNEY S. BEARDSLEY et al., Defendants; LINNIE L. TRUTH et al., Appellants.

[1] MORTGAGES — DEED INTENDED AS — SECURITY FOR FUTURE PUR-CHASES—TIME—LETTER.—In the absence of evidence to the contrary, it cannot be assumed that a letter was delivered later than

---

1. Whether a deed absolute on its face, but intended to secure a debt, conveys the legal title, note, 11 **L. R. A. (N. S.)** 209.

the date it bears; nor can the fact that a deed, intended as a mortgage to secure payment of future purchases, was executed and delivered at a time subsequent to the date of the letter, which was written by the grantor in the deed, overcome a plain declaration in the letter that the deed was to secure obligations incurred "within one year from date."

[2] ID.—AGREEMENT SECURED BY DEED.—A deed given to secure payment for future purchases is not a deed of trust but is, under the law of this state, merely a mortgage, and the agreement as to the indebtedness which it is to secure is the agreement between the mortgagor and mortgagee.

[3] ID. — EVIDENCE—ORAL AGREEMENTS—ACQUIESCENCE — LETTERS.— In dealing with a deed absolute given as security the court is not bound by the rule that writings cannot be contradicted by parol, and it is therefore permissible to establish the agreement of the grantor by his acquiescence in a statement made by or on behalf of the persons for whose security the obligation is given; but letters written by the grantee of the deed, one to the grantor and the other to the one for whose benefit it was executed, declaring the deed was to secure payment for purchases up to a certain time, are not binding on the grantor in the absence of evidence that he received them.

[4] ID.—PRIORITIES—CONTRACT OF PURCHASE—NOTICE.—Where by the original agreement under which property was deeded to secure payment for future purchases the indebtedness secured was only that accruing before a certain date, subsequent agreements enlarging the terms of the security are not binding against persons entering into a contract to purchase the property, whose rights were derived prior thereto and notice of which was given by the recordation of their contract.

[5] ID.—LIMITED FUTURE ADVANCES—INTERVENING RIGHTS.—The rule that where an agreement is made to secure future advances those advances can be made at any time prior to actual notice of the intervening rights of others does not apply to a case where the original agreement definitely restricts further advances to those made before a definite date.

[6] ID. — DECLARATIONS OF OWNER OF FEE — RIGHTS OF EQUITABLE OWNERS.—The declaration of the grantor in a deed given to secure payment for future purchases that the deed should be security for purchases theretofore made and that it had been intended to cover purchases up to a certain time, although made while the grantor held the fee in the property, is not binding upon parties who then had vested equitable rights in the property under a contract of purchase.

[7] ID.—CONTRACT OF PURCHASE—ACKNOWLEDGMENT—RECORDATION— NOTICE.—Acknowledgment by the vendees alone under a contract

of purchase of real property is insufficient to give the successors of the vendor the constructive notice which would otherwise result from the recordation after proper acknowledgment by the vendor.

[8] ID.—RECORDING—BOOK OF DEEDS.—A contract for the purchase of real property can properly be recorded in the book of deeds.

[9] ID.—NOTICE—POSSESSION OF PROPERTY—FINDINGS.—Where vendees of real property, who had taken possession of and made improvements upon the property were thereafter temporarily absent therefrom, it is for the trial court to determine whether the possession was of such character as to give notice of the rights of the vendees or put others upon inquiry with reference thereto, and to find the ultimate fact of notice in an action to foreclose a mortgage which involves the question of priorities as between the mortgagee and the vendees of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Reversed.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg and Alex W. Davis for Appellants.

Shelton & Levy and Sapiro, Levy, Hatfield & Hayes for Respondents.

WILBUR, C. J.—On May 12, 1915, the defendants Volney S. Beardsley and wife executed a deed to the plaintiff Samuel J. Keese. This deed was given to secure to the Westinghouse Electric & Manufacturing Company, hereinafter referred to as the ''Westinghouse Company,'' the amount of the purchase price of certain electric motors thereafter to be purchased by the Beardsley Electric Company from the Westinghouse Company. Plaintiffs treating said deed as a mortgage, brought this action to foreclose the mortgage, making Linnie L. Truth and Francis Truth parties defendant by reason of the fact that subsequent to the execution of the deed, in September, 1915, these defendants entered into an agreement with Volney S. Beardsley and wife for the purchase of the land described in the deed. Judgment was rendered foreclosing the mortgage and decreeing that the claims of the defendants Truth were subject to the lien of the mortgage. From this decree the defendants Truth appeal. They will hereafter be re-

ferred to as the appellants. The amount claimed by the plaintiffs to be secured by the mortgage is the amount coming to them as damages by reason of the breach of a contract of purchase of twenty-five electric motors entered into between the Beardsley Electric Company and the Westinghouse Company on April 10, 1916.

[1] The first question for determination is whether or not the deed was intended to secure the Westinghouse Company for the purchase price of motors after March 30, 1916. The doubt upon this question arises in the first instance because of the fact that although the deed is dated May 12, 1915, the letter of the grantor Volney S. Beardsley, in which he declares that the purpose of the deed was to secure the Westinghouse Company, stated that the deed was to secure purchases within "one year from date." This letter was dated March 30, 1915. The respondents contend, however, that as the deed was executed and delivered May 12, 1915, it must be assumed that the letter was also delivered on that date and that the year runs not from the date of the letter but from the date of the deed. Inasmuch as there was no direct evidence as to the date of the delivery of the letter, it cannot be assumed that it was delivered at a date later than March 30, 1915, nor could the fact of such delivery at a later date overcome the plain declaration in the letter itself than it was to secure obligations incurred "within one year from date." This, however, does not solve the difficulty, for the reason that there were offered and received in evidence two letters written by plaintiff Keese, grantee in the deed, in which he declares that the purpose of the deed is to secure the Westinghouse Company for purchases made within one year after May 12, 1915. One of these letters is directed to the defendant Beardsley and the other to the Westinghouse Company. The respondents contend that these letters are in effect a declaration of trust coming as they do from a grantee in the deed, and that they are therefore binding upon all the parties to the transaction. [2] The answer to this proposition is that the deed was not a deed of trust but was under our statute merely a mortgage and that the agreement as to the indebtedness which it was to secure was the agreement between the mortgagor and mortgagee. If these letters dated May 12, 1915, had been received by the parties to

whom they were addressed and acquiesced in by them, there is no doubt that such acquiescence would have constituted a binding contract. [3] In dealing with a deed absolute given as security we are not bound by the rule that writings cannot be contradicted by parol, and it is therefore permissible to establish the agreement of the grantor by his acquiescence in a statement made by or on behalf of the persons for whose security the obligation is given (Civ. Code, secs. 2924, 2925). The difficulty in this case is that there is no evidence whatever that the letter to the grantor Beardsley was received by him. The copies of these letters were produced by the plaintiffs from the files of the Westinghouse Company and, therefore, it may· be properly inferred they were received by the Westinghouse Company, but there is no inference that they were received by the grantor. It follows, then, that the original agreement for security was one securing the Westinghouse Company for purchases made prior to March 30, 1916. The purchases in question were made on April 10, 1916, while the contract of purchase of the land entered into by the appellants was recorded April 3, 1916. The appellants contend that any agreement made between Beardsley and the Westinghouse Company after they had taken possession of the premises in September, 1915, and particularly after the recordation of their contract, April 3, 1916, is not binding upon them.

In view of the fact that the trial court found that although the appellants had entered into possession of the premises in September, 1915, and had· erected a residence and outbuildings thereon valued at about six thousand dollars, they had left the premises and did not occupy it at the time of the transactions next hereafter to be considered, we will first consider the question of the relative rights of the parties growing out of the recordation of the contract on April 3, 1916. While the respondents attack the sufficiency of such recordation, we will first assume that the recordation was proper and gave constructive notice of the rights of the appellants.

The first claim advanced by the respondents is that inasmuch as the obligations secured thereby were secured by a deed purporting to convey the entire fee, that the conveyance of the fee was notice of any subsequent right or lien less than a fee. This position cannot be maintained, for the

reason that the transaction under our statute was in legal effect a mere mortgage and that the terms of the mortgage are to be shown by parol. Subsequent purchasers were required to take notice only of the existence of the deed and the rights thereby secured, and having ascertained the extent of these rights, we have ascertained the question of priority and the extent thereof. [4] It follows that if under the original agreement between the mortgagor and mortgagee the indebtedness secured was only that accruing before March 30, 1916, subsequent agreements enlarging the terms of the security would not be binding against the appellants whose rights were derived prior thereto and notice of which was given by the recordation of their contract.

[5] Respondents insist that inasmuch as the agreement was to secure future advances, those advances could be made at any time prior to actual notice of the intervening rights of the appellants. This rule does not apply to a case where the original agreement definitely restricted further advances to those made before a definite date. Any purchases or advancements made after that date were not made under the original contract but only under the supplemental and subsequent agreement. Respondents' next contention is that the agreement for the additional advance was made on March 29, 1916, and that, therefore, although the contract of purchase or advance was actually made after the expiration of a year, the extension of the security to cover this purchase was made within the year. With reference to this proposition it is sufficient to say that the evidence does not sustain the contention that there was an agreement of extension entered into between the parties before the 30th of March. Beardsley simply stated that he was willing to enter into a renewal of the security to cover the contemplated contract of purchase. He did not then and there agree that the deed theretofore given should be treated as such security. It follows, then, from what has been said that the agreement that the deed of May 12, 1915, should be considered as security for the contract of purchase made April 10, 1915, cannot be sustained unless by reason of other evidence not yet considered.

Respondents advance the proposition that a contract made in September, 1916, by which Beardsley expressly agreed that the deed should be considered as security for the con-

tract of April 10, 1916, and in which it was expressly stated
that the deed was originally given to secure indebtedness
incurred within one year after May 12, 1915, while not
binding upon the appellants' interest in the real property,
when considered as a new and independent or supplemental
contract, was at least a declaration of Beardsley as to the
nature and effect of the original agreement and, therefore,
was evidence of such agreement admissible against his ven-
dees, the appellants. [6] This declaration, it is true, was
made by Beardsley during the period that he still owned
the fee in the property and would therefore be binding upon
his successor (sec. 1849, Code Civ. Proc.), but the appel-
lants, who claim under an agreement which had theretofore
vested the equitable title in them, were not bound by such
declarations and they cannot be considered as evidence
against appellants in determining their rights, being mere
hearsay.

Having thus determined that the appellants were protected
by the recordation of their contract against the future agree-
ments entered into by their vendor and that the arrange-
ments made between that vendor and the respondents were
of that character, it is necessary to consider the objections
of the respondents to the sufficiency of the recordation of
the contract. The first objection made is that the contract
of purchase was acknowledged by the vendees and not by
the vendors, and hence was not notice to the plaintiffs of the
sale of the premises to the appellants.

It is sufficient in answer to this point to say that it is
alleged in the appellants' cross-complaint that the agreement
of purchase was "recorded in the office of the county re-
corder of the county of Los Angeles, state of California,
book 6187, page 198." This allegation is not denied in
plaintiffs' answer to the appellants' cross-complaint, and the
court found the fact to be that "On April 3, 1916, said
agreement was recorded in the office of the county recorder
of the county of Los Angeles, State of California, in book
6187 of deeds, at page 198." The agreement attached to
the cross-complaint as an exhibit has annexed thereto the
acknowledgment of the purchaser only, but *non constat* the
agreement was not acknowledged by the seller as well. If
the acknowledgment of the seller is essential to the recorda-
tion of the agreement the finding that it was in fact recorded

is an implied finding that it was so acknowledged. This finding being in favor of the appellants is, of course, not attacked by them and cannot be by the respondents. [7] Inasmuch, however, as a new trial must be had, it should be said for the benefit of the parties on such retrial that the acknowledgment by the *vendees* alone was an insufficient acknowledgment to give the successors of the vendor the constructive notice which would otherwise have resulted from its recordation after proper acknowledgment by the vendor. In this regard section 1161 of the Civil Code provides that ''Before an instrument can be recorded, . . . its execution must be acknowledged by the person executing it . . . '' It is true in a sense that when acknowledged by any one of several persons executing it, the conveyance is acknowledged by ''the person executing it.'' On the other hand, it is also true that under our code (Civ. Code, sec. 14) the singular includes the plural and hence section 1161 of the Civil Code might be construed as requiring all persons executing an instrument to acknowledge it, but the provisions concerning the recording of instruments must be construed in the light of their purpose, that is, to give notice to subsequent claimants of the acts of prior owners, alienating or encumbering the title. An acknowledged instrument carries with it the proof of its due execution by the person who so acknowledges it. It is therefore necessary that it be acknowledged by the person whose rights in the property are alienated or encumbered thereby, such as the grantor, or mortgagor, or vendor. It was held in *Spect* v. *Gregg*, 51 Cal. 198, that the acknowledgment of a power of attorney by one of four persons jointly executing the same entitled the deed from such attorney executed on behalf of the four joining in the power of attorney to be recorded, and that such record was notice to purchasers from the person who acknowledged the power of attorney. In *Fresno Canal etc. Co.* v. *Rowell*, 80 Cal. 114, 117 [13 Am. St. Rep. 112, 22 Pac. 53], it was held a sufficient record to give constructive notice where the owner of property, who executed an agreement which created a lien on his property to pay water rates, acknowledged the instrument and it was thereupon recorded, although the other party failed to acknowledge it.

The question is discussed and all the authorities carefully reviewed in the recent case of *Bell* v. *Sage*, 60 Cal. App. 149 [212 Pac. 404], by the third district court of appeal, in which case a transfer to this court was denied. This fact renders unnecessary an extensive discussion by us. The case of *People* v. *Donegan*, 226 N. Y. 84 [123 N. E. 71], a recent New York decision (March 18, 1919), on *mandamus*, deals with the duty of a registrar where one of four grantors in a deed failed to acknowledge it in a proper manner. The law of that state with reference to recordation is substantially the same as of this state (sec. 1161, Civ. Code). The New York statute provides that "A conveyance of real property within the state, on being duly acknowledged by the person executing the same . . . may be recorded in the office of the clerk of the county where such real property is situated." The court of appeals of New York held that it was the duty of the registrar to record the instrument but not to index it in the name of the grantor who failed to acknowledge it. In short, that it should be treated for the purpose of recordation as the act only of those persons who acknowledged it. This decision is in accord with our own decision (*Fresno Canal etc. Co.* v. *Rowell*, *supra*), and leads us to the conclusion that the recordation of the agreement of sale in the case at bar would not be constructive notice of its existence against the grantees or mortgagees of Beardsley, the vendor in the contract, unless acknowledged by him.

[8] It is next contended that the contract should have been recorded in the miscellaneous records and not in the book of deeds. The supreme court of Washington in *Bernard* v. *Benson*, 58 Wash. 191 [137 Am. St. Rep. 1051, 108 Pac. 439], under statutes similar to ours with reference to recordation, held that a contract for the sale of real estate was included within the meaning of the words used in the statute, "deeds, grants and transfers of real property," and, therefore, that such conveyance could be properly recorded in the book of deeds. In *Jackson* v. *Torrence*, 83 Cal. 521 [23 Pac. 695], it was held that an executory contract to convey real estate was a "conveyance" of real estate within the meaning of section 1093 of the Civil Code and as such required to be acknowledged as a grant. Inasmuch as the effect of the contract was to convey or transfer

the equitable title to the land, it clearly comes within the meaning of a "conveyance" or "transfer" as used in the statute with reference to the recordation of such instrument. There is nothing in the cases of *Kent* v. *Williams,* 146 Cal. 3 [79 Pac. 527], and *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [15 L. R. A. (N. S.) 359, 93 Pac. 858], inconsistent with this view.

[9] In view of a new trial something should also be said in reference to the effect of possession as notice, in the event that it should appear on the new trial that the record of the contract did not give constructive notice of the rights of the plaintiffs.

The cross-complaint alleges that immediately upon the execution of the contract of purchase the appellants entered into the possession of the premises and erected a dwelling-house and other improvements thereon and ever since have been in the open, notorious, and exclusive possession of the real property involved in this action. The plaintiffs denied such possession, and the court in its findings of fact found that on September 27, 1915, the appellants entered into possession of the premises and built several permanent buildings thereon and occupied the same until March 1, 1916, and found "That said defendants then ceased to occupy said premises and continued out of such occupancy until subsequent to January 26, 1918." There is no express finding upon the ultimate fact of which possession is evidence, that is, notice of the claims of the possessor (*Fair* v. *Stevenot,* 29 Cal. 486; *Hellman* v. *Levy et al.,* 55 Cal. 117, 119). If the vendee was temporarily absent from the premises, it was for the trial court to determine whether the possession was of such character as to give notice of the rights of the vendee or put him upon inquiry with reference thereto (*Hellman* v. *Levy, supra*) and to determine the ultimate fact of notice (see, also, *Randall* v. *Allen,* 180 Cal. 298 [180 Pac. 941]; *Bessho* v. *General Petroleum Corp.,* 186 Cal. 133 [199 Pac. 22]; *Gibbons* v. *Yosemite Lumber Co.,* 190 Cal. 168 [211 Pac. 4]).

We conclude that the original agreement did not secure to the Westinghouse Company the performance of the agreement of April 10, 1916, as found by the trial court, and that the subsequent agreements entered into between Beardsley and the Westinghouse Company by which it was agreed that

the deed should be considered security for the performance of the contract of April 10, 1916, was subordinate, under the facts found at the trial, to the rights of the appellants under their contract of purchase entered into September, 1915, and recorded April 3, 1916, before the supplemental agreement between the Westinghouse Company and Beardsley was entered into. The finding to the contrary not being supported by the evidence, the judgment was erroneous.

Judgment reversed.

Lennon, J., Waste, J., Myers, J., Kerrigan, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.