[L. A. No. 9280.   Department One.—September 19, 1928.]

NANCY E. ADAMS et al., Respondents, v. PETROLEUM MIDWAY CO., LTD. (a Corporation), Appellant.

Morgrage & Stanley for Appellant.

W. C. Shelton for Respondents.

SEAWELL, J.—Defendant, Petroleum Midway Company, appeals from a judgment for plaintiffs in the sum of $7,799.01 entered upon a complaint in the form of a count for money had and received by defendant for the use and benefit of plaintiffs. The case was tried upon an agreed statement of facts, from which it appears that the sum sued for was claimed by plaintiffs as due and owing to them as royalty under the terms of a lease of oil lands, situate in Huntington Beach, executed by plaintiffs as lessors to the Columbia Leasing and Developing Company as lessee, and by it assigned to defendant and appellant herein.

Before action brought, defendant had paid to plaintiffs a sum equal to one-sixth of the prevailing market price of a quantity of oil and other products equal to the entire output of the well situate upon the leased lands, instead of one-sixth of the ''net proceeds'' of said sales as provided by the lease contract. The plaintiffs' contention, upheld by the court below, was that the obligation of the defendant under the terms of said lease was to pay them one-sixth of the amount actually realized from the sale of the oil and other products of the well upon the leased lands, the amount sued for being the difference between one-sixth of the sum actually received from the sale of the entire output, a portion of the oil produced thereon having been sold at the rate of $2.00 a barrel, which was considerably higher than the prevailing market price, and one-sixth of the amount which would have been received had the entire production been sold at the market price.

The provision of the lease in question is as follows:

"To have and to hold the same unto the said lessee, its heirs, successors and assigns, for the term of one year from and after the date hereof, and as much longer as petroleum, maltha, or gas shall be produced by said lessee from said lands; yielding and paying therefor unto the said lessors, to be shared in proportion to the acreage herein leased by each of them, one-sixth part of so much of said petroleum, maltha and gas produced and saved from said lands by the lessee . . . as shall be evidenced by written statement thereof to be rendered the lessors on or about the fifteenth day of each month, for the oil, maltha, or gas produced during the preceding calendar month, delivery of the quantity of oil or maltha due the lessors to be made free of expense into tanks, storage not to exceed thirty day period, or the oil, maltha or gas to be sold and settlement made with lessors for the net proceeds of such sales, on or about the fifteenth day of each month."

The defendant Midway Company and several other companies contracted with the Union Oil Company for the sale of a certain amount of the oil produced from wells controlled by the sellers to the Union Oil Company at the rate of two dollars per barrel. The oil which is the subject of the present controversy was produced from a well on the lands leased by plaintiffs to defendant during the months of March to July, 1923. The oil and other products of the well were never divided and delivered in kind to the plaintiffs as lessors, but the entire output, with the exception of an insignificant quantity used by defendant in the operation of other wells, was sold. All oil not sold to the Union Oil Company under the contract at the rate of two dollars per barrel was sold at the market prices. Before action brought defendant had paid plaintiffs one-sixth of the amount received from the sale of all oil and other products so sold at market prices, and one-sixth of the market price of the products sold to the Union Oil Company, actually marketed by appellant by authority of said lease at the much higher rate of two dollars per barrel.

Appellant's contention is that the lease by implication authorizes the lessee, if it shall elect to satisfy its obligation to the lessors by a money payment, rather than by delivery of one-sixth of the output, to pay a sum equal to

one-sixth of the prevailing market price of the entire output, rather than to pay one-sixth of the amount actually received upon sales. The lease certainly does not expressly provide that the prevailing market price rather than the actual sales price is to be the basis of computation, and we find no reason for implying such a term.

Appellant further contends that since upon a division in kind of the oil the lessors would be entitled to receive a one-sixth thereof, it may pay to said lessors the sum actually received for any one-sixth sold, and since more than one-sixth was sold at the market price and a sum equal to the amount received for said one-sixth paid to plaintiffs, it has fully discharged its obligation. Thus, appellant would be enabled to pay to the lessors the amount received from the sale of the one-sixth part of the oil sold at the lowest price and to retain for itself the larger profits realized from the oil sold at the higher prices. The trial court interpreted the lease to mean that the lessors were entitled to one-sixth of the total amount received from the sale of the entire output. If it should be conceded that the provision of the lease is sufficiently uncertain to admit of the meaning which appellant gives it, it certainly cannot be said that the agreement, considered in the light of the facts stipulated to, is not susceptible of the interpretation placed upon it by the court. Hence we cannot disturb the decision. It was the province of the trial court to resolve doubtful language in the lease. We are further of the opinion that the construction placed upon the provisions of the lease by the trial court is more reasonable than the interpretation sought by appellant.

The result must be the same whether the covenant of the lease should be construed as creating a cotenancy in the lessors and defendant in the output of the well, or is more properly interpreted as reserving to the lessors merely a right to receive a stipulated proportion of the yield as rent, with no interest in the specific property until a one-sixth share should be segregated. Regardless of the nature of the relationship before a sale, thereafter the obligation of the defendant was to pay one-sixth of the actual net proceeds.

Ordinarily recovery of money due by the terms of a subsisting written contract should not be sought under a count for money had and received, but the complaint should

set forth the breach of the express contract. In the instant case no objection was made to the admissibility of evidence of the express contract, but instead appellant joined with respondents in a statement of agreed facts setting forth the execution of the contract of lease and the acts performed by appellant thereunder. By their stipulation the parties made the question of the interpretation of the sale provision of the lease virtually the sole issue in the case and consented to the determination of said issue by the court under the pleadings as framed. Under these circumstances, if it be conceded that a different form of pleading would have been more appropriate, appellant cannot now be heard to complain. It has suffered no prejudice.

Judgment affirmed.

Curtis, J., and Preston J., concurred.