[Civ. No. 2495.  Fourth Appellate District.—December 10, 1940.]

TIDE WATER ASSOCIATED OIL COMPANY (a Corporation), Respondent, v. EMMA J. CURTIN et al., Appellants.

W. Cloyd Snyder and A. W. Rutan for Appellants.

Wm. F. Kiessig, Wm. I. Robinson, Harrison Guio and Paul O. Broxon for Respondent.

GRIFFIN, J.—This action for declaratory relief was brought by plaintiff and respondent to determine its rights as lessee under a certain oil and gas lease. The question presented to the trial court was whether all of lessee's rights under the lease terminated *at the end of twenty years,* or whether lessee was entitled to remain in possession of and to operate certain producing wells *for so long as oil or gas is produced and marketed from such wells.* The trial court gave judgment for respondent declaring that the lessee had the right to operate producing wells under the terms of the lease so long as oil or gas is produced and marketed therefrom.

On May 17, 1919, Emma J. Curtin, one of the appellants herein, was the administratrix of the estate of Erwin Bayha, deceased, which estate owned an interest in the land covered by the oil lease here in question. The estate was in course of probate in the Superior Court of Orange County. A petition was filed in that court by the administratrix seeking authority to execute the lease.

The petition to lease said property provided in part as follows: "That the term of said proposed lease is twenty (20) years from and after the 10th day of May, A. D. 1919, . . . " The order granting said petition reads in part as follows: "It is ordered that said Emma J. Bayha, as administratrix of the estate of Erwin Bayha, deceased, be and she is hereby authorized, empowered and directed to lease that certain real property belonging to the estate of said Erwin

Bayha, deceased, . . . for the term of twenty years, for the purpose of exploiting for minerals and mineral oils and petroleum, and extracting minerals therefrom . . . ''

The oil lease was executed on May 17, 1919, by Emma J. Curtin individually as to her own personal interest and also by her as administratrix of the said estate. Later the estate was distributed and certain of the appellants were distributees. Oil wells were drilled on the demised premises and royalties paid thereon until May 17, 1939. Pertinent portions of the lease are as follows:

'' . . . Lessors . . . demise unto the Lessee . . . all of the real property belonging to the said estate of Erwin Bayha, deceased, and said Emma J. Bayha, individually, . . . for the term of twenty years, commencing on the 17th day of May, 1919, and ending on the 17th day of May, 1939, for the purposes and with the sole and exclusive right to the Lessee of exploiting and drilling for, developing, producing . . . petroleum, oil, . . . upon and from said land . . . *Provided* that at the expiration of twenty (20) years from May 17th, 1919, that is to say on May 17, 1939, the *said right to explore* and *drill for oil* and other hydrocarbon substances shall terminate . . . '' (Then follows a description of the land.)

''The lessee agrees to pay the Lessors a royalty of one-sixth (1/6th) of the net amount of all petroleum, oil, . . . which may be produced . . . '' (Then follows provisions and conditions for the drilling of successive wells on the property. The lease further provides:

''The Lessee agrees to operate each completed well on the premises to its full capacity so long as such well or wells shall produce oil in paying quantities *while this lease is in force*'' and that

''The Lessee may at its election at any time after the completion of the first well or any subsequent well cease further drilling, and if the well or wells hereinabove provided for shall not have been drilled when the Lessee permanently ceases drilling, this lease shall thereupon terminate as to all of the demised premises, except such land covering and surrounding each producing well, or well being drilled, as may be necessary or convenient in the operation of the producing well or in the drilling of any well being drilled, not exceeding, however, five acres surrounding each producing well and five acres surrounding each well being drilled, *and the*

*Lessee may hold each of said five acre tracts free of further drilling obligations so long as oil or gas is produced and marketed from the well thereon* . . . Lessee shall have the right at any time prior to the expiration of Ninety days after the termination of this lease to remove from the demised premises all structures . . . including casing in nonproductive wells . . .

"Upon the termination of *all* the Lessee's right under this lease the title to all unsevered petroleum, oil, natural gas and other hydrocarbon substances lying in and under the demised premises shall revert to the said Lessors, and the Lessee agrees thereupon and upon demand of the Lessors to execute and deliver to the Lessors an instrument quitclaiming to the said Lessors all interest of the Lessee in the demised premises, so as to effectually clear the title to said premises from any interest of the Lessee therein under this lease . . . no failure on the part of the Lessee to comply with any of the provisions of this lease as to any well or wells on any parcel of five acres surrounding same shall affect the right of the Lessee to continue its possession or operation of any other well or wells situated on any other five acre parcel or parcels. . . . Whenever *during the term of this* lease the Lessee shall determine that any portion of the demised premises is not, . . . oil producing territory" he "shall release to the Lessors all such portion . . .

"This lease is entered into . . . pursuant to an order of the Superior Court . . . made on the 9th day of May, 1919, . . . authorizing such lease to be made by said Administratrix." (Italics ours.)

On August 20, 1926, a written agreement was signed respecting the leased premises. It reads in part as follows:

"Whereas, the parties hereto are the successors in interest of the parties to said lease and agreement of May 17, 1919, and

"Whereas, second party is willing to commence drilling operations forthwith on the demised premises for the purpose of exploring for and obtaining production from deeper oil sands, and the first parties desire to have such drilling and exploring done,

"Now, Therefore, in consideration of the premises and the covenants hereinafter contained, it is hereby agreed between the parties hereto as follows, to wit:

"1st: That all of the provisions of such lease and agreement of May 17, 1919, have been complied with to the date hereof.

"2nd: Said lease and agreement of May 17, 1919 and any and all amendments or modifications thereof heretofore entered into shall remain in full force and effect, except as herein provided . . . " (Signed by appellants herein, as parties of the first part, and respondent as party of the second part.)

On January 29, 1937, a portion of the demised premises was quitclaimed to certain of appellants by deed. After August 20, 1926, two wells were drilled deeper than previous wells. Upon being notified by appellants' counsel of the claimed expiration of the lease on May 17, 1939, the respondent refused to quitclaim or to deliver up possession, and thereupon filed this action for declaratory relief. A demurrer and answer were filed concurrently and upon the hearing of the demurrer it was agreed to submit the controversy upon the pleadings and stipulated facts, as above outlined. The court then overruled the demurrer and gave judgment for the respondent, declaring:

"That under the terms of said oil and gas lease dated May 17, 1919, . . . plaintiff is entitled to remain in possession of and to produce and operate wells numbers 2, 3 and 5 on the premises covered by said lease, . . . for so long as oil or gas is produced and marketed from each of said wells . . . That by the terms of the agreement dated August 20, 1926," appellants "ratified said lease as to all of its terms and provisions and said parties are estopped to claim that said lease is void as to any period extending in excess of the twenty-year period provided in said lease."

Appellants first argue that the complaint does not state facts sufficient to constitute a cause of action for declaratory relief because the oil lease in question provides a definite twenty-year term which is nowhere in the instrument qualified or rendered uncertain or ambiguous as to the time of its termination, so as to provide the basis for any controversy or basis for declaratory relief. In support of this point it is argued that section 1579 of the Code of Civil Procedure then in effect (Stats. 1909, chap. 326, p. 540) provided " . . . the period of the lease, which must in no case be longer than for ten years . . . provided that, for the purpose of exploiting for minerals, or mineral oils or petroleum and

extracting minerals therefrom, the period of the lease may be for twenty years'', and that the lessee knew that on the date of the lease it could not have made a lease binding the estate of Bayha for more than twenty years. (See, also, sec. 842, Prob. Code.)

It is further argued that the language used in the lease to the effect that the lease commenced on May 17, 1919, and ended on May 17, 1939, was definite and unqualified, simple and understandable, and could not be qualified by inference or by any indirect or ambiguous clause appearing later in the instrument, citing Civil Code, sections 1641, 1642, 1643, 1644, 1645, 1648, 1649, 1650, 1652 and 1653. Appellants contend that the instrument, taken by its four corners, and considered as a whole, does not support the court's finding that the lease was not terminated ''at the expiration of twenty years from the date thereof, as to the five-acre tracts surrounding each well'' or ''for so long as oil or gas is produced and marketed from such well''. Appellants contend that the court misconstrued the ''five-acre drilling clause''; that by the terms thereof the lessee was not authorized to operate the producing wells on the five acres in question after the expiration of the twenty-year period, and that by necessary implication there is added to that clause ''but not extending beyond the operation date of the lease, namely, May 17, 1939'', citing *Scudder* v. *Perce,* 159 Cal. 429 [114 Pac. 571]; *Brady* v. *Bartlett,* 56 Cal. 350; *Loyalton Elec. L. Co.* v. *California Pine Box etc. Co.,* 22 Cal. App. 75 [133 Pac. 323]; that respondent's interpretation of the five-acre drilling clause would be a construction holding that the parties intended a violation of section 1579 of the Code of Civil Procedure, and that the trial court should not have favored such an interpretation; that the quoted portions of the lease show that all parties understood that there would be oil in paying quantities remaining in the ground after the lease had ceased its operation, that is, after the twenty-year period of the oil lease, and that the obligation of the lessee to produce oil in paying quantities only continued ''while this lease is in force''; that the signing of the written agreement of August 20, 1926, by the distributees (heirs of the Bayha estate), did not extend the term of the lease beyond twenty years and was not a ratification thereof, and did not make lawful an otherwise unlawful term beyond twenty years, citing 52 Corpus Juris, page 1144, section 1. 25 Corpus Juris, page

1180, section 476, is also cited to the effect that as a general rule the facts or circumstances to be considered are those which are known to the parties when the lease is made, and the lease must receive its construction as of the date it becomes operative and not in the light of subsequent events; that it was the intent of all the parties at the time of the making of the lease that its term was for 20 years and no more and that a subsequent ratification of such lease could not extend the term thereof without some specific provision in reference thereto and that such specific provision of extension was not contained in the agreement of August 20, 1926; that the drilling of two oil wells after August 20, 1926, had no bearing on the term of the original lease to extend it or to otherwise qualify it; that the acceptance of benefits from such additional production thirteen years before the expiration of the lease did not operate as a benefit accruing to appellants after May 17, 1939, which could, in any manner, be construed as a ratification of the extension of the lease after its expiration date; that the fact alone that the so-called ratification agreement made no mention of any extension, should be convincing evidence that no such intention was manifested; that the lease, if it provided that it was to be *for a period of twenty years and so long thereafter as oil or gas was discovered in paying quantities on the leased property,* would have been void as to the estate. (*McPike* v. *Superior Court,* 220 Cal. 254 [30 Pac. (2d) 17]; *Brosnan* v. *Kramer,* 135 Cal. 36, 40 [66 Pac. 979]; *Smith* v. *Westerfield,* 88 Cal. 374, 378 [26 Pac. 206]; *The Texas Company* v. *Bank of America etc. Assn.,* 5 Cal. (2d) 35 [53 Pac. (2d) 127]; *Welsh* v. *Cross,* 146 Cal. 621 [81 Pac. 229, 106 Am. St. Rep. 63, 2 Ann. Cas. 796]; *Gally* v. *Wynne,* 96 Cal. App. 145 [273 Pac. 825]; *Granger* v. *New Jersey Insurance Co.,* 108 Cal. App. 290 [291 Pac. 698].)

Respondent in reply points out, first, the rule stated in *Adams* v. *Petroleum Midway Co., Ltd.,* 205 Cal. 221, 224 [270 Pac. 668], that: "If it should be conceded that the provision of the lease is sufficiently uncertain to admit of the meaning which appellants give it, it certainly cannot be said that the agreement, considered in the light of the facts stipulated to, is not susceptible of the interpretation placed upon it by the court. Hence we cannot disturb the decision. It was the province of the trial court to resolve doubtful language in the lease." In the cited case the court was con-

cerned with the construction of an oil and gas lease and the case was tried on an agreed statement of facts. Similarly, the case at bar was tried upon the pleadings and certain stipulated facts. (See, also, *Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal. App. (2d) 94 [44 Pac. (2d) 670]; *Kautz* v. *Zurich Gen. Acc. & L. Ins. Co.*, 212 Cal. 576, 582 [300 Pac. 34]; *Evans* v. *Citizens Nat. Tr. & Sav. Bank*, 29 Cal. App. (2d) 133, 141 [84 Pac. (2d) 218]; *Culley* v. *Cochran*, 17 Cal. App. (2d) 498, 503 [62 Pac. (2d) 168]; *Swerdfeger* v. *United Acceptance Corp.*, 9 Cal. App. (2d) 590, 593, 594 [50 Pac. (2d) 818].) Respondent further argues that the judgment of the trial court in the instant case permits the lessee to remain in possession of and to operate three wells on the leased premises for so long as oil or gas is produced and marketed from those wells, paying the one-sixth royalty provided under the lease, and otherwise operating in accordance with the provisions of the lease, and that the judgment is not only in accord with the expressed provisions of the lease but is fair and equitable; that it cannot be said that the judgment is so unreasonable as to permit this court to substitute its independent judgment therefor.

Respondent insists that by the terms of the lease, i. e., "the Lessee may hold each of said five acre tracts free of further drilling obligations so long as oil or gas is produced and marketed from the well thereon . . . ", there is no limitation as to the time in that provision, and it unmistakably and clearly states that lessee may hold such five-acre tract "so long as oil or gas is produced and marketed from the well thereon"; that another paragraph gives the lessee the "right to do such acts and things as may be necessary to keep said wells in the highest productive state", which indicates that lessee may remain in possession of and produce from such wells for so long as oil or gas is produced and marketed therefrom; that appellants are not authorized to read into the lease, by inference or otherwise, that it was intended thereby that after the words "so long as oil or gas is produced and marketed from the well thereon" there should be added by implication, as contended by appellants, "but not exceeding twenty years", citing *Loyalton Elec. L. Co.* v. *California Pine Box etc. Co.*, *supra*. In other words, respondent construes the provisions of the lease to intend that even when lessee has drilled a well but has not complied with all of its drilling obligations, it is nevertheless permitted to remain in

possession of five-acre tracts surrounding each producing well and may hold such five-acre tracts free of further drilling operations so long as oil or gas is produced and marketed thereon, and it may do such acts and things as may be necessary to keep such wells in the highest productive state; and that even should lessee breach its lease by not drilling all of the wells provided to be drilled thereunder, the lease might be terminated in part, but not as to producing wells or wells being drilled, and that even in case of a breach of the lease so that a partial forfeiture might result, still it was not contemplated that the lease should terminate as to producing wells, and as to such wells it is stated specifically that the lease shall remain in effect for so long as oil or gas is produced and marketed from such wells; that the granting clause of the lease demonstrates that this is correct; that the property by the terms thereof is leased ''for the term of twenty years . . . for the purposes and with the sole and exclusive right to the Lessee of exploiting and drilling for, developing, producing, extracting, bringing to the surface, obtaining, taking, storing, removing and carrying away petroleum, . . . '' and it is then stated: ''Provided that at the expiration of twenty (20) years . . . the said right to *explore and drill for oil* and other hydrocarbon substances shall terminate''; that an oil and gas lease is given for three purposes, first, to explore for, second, to drill for, and third, to produce oil and gas; that in the demising clause all three of these rights are granted for a period of twenty years; that in the proviso only the *right to explore for* and the *right to drill for* oil and gas terminated at the end of twenty years; that therefore, while the *right to explore for* and the *right to drill for* oil and gas may terminate at the end of twenty years, the *right to produce* continues beyond that period and ''so long as oil or gas is produced and marketed from'' producing wells; that no other possible meaning may be given to the proviso, and that unless this construction is given to it the proviso is utterly meaningless; that the right of lessee to retain producing wells for the life of the wells is further evidenced by the provision that ''upon the termination of all of the lessee's right under this lease the title . . . shall revert to the said lessors . . . ''; that the use of the word ''all'' in this clause is highly significant and that it clearly expresses the intention that some rights under the lease shall terminate before the termination of other rights, that is, the

right to drill for and the right to explore for oil and gas may terminate at the end of twenty years; that the right to produce continues so long as oil or gas is produced and marketed from producing wells; that in other provisions of the lease the use of the words "while this lease is in force" and "during the life of this lease" is also evidence that the right to produce shall continue so long as oil or gas is produced and marketed from producing wells; that the expressions "while the lease is in force" and "during the life of this lease" are significant; that nowhere in the lease will be found the limitation "during the twenty-year period provided for in this lease"; that the only reference in the lease to the twenty-year period is in the granting clause where, by the proviso, only the right to explore for and the right to drill for oil or gas are limited to twenty years.

In answer to appellants' argument that section 1579 of the Code of Civil Procedure admittedly limited the duration of an oil and gas lease given by an executor and administrator to a period of twenty years, it is contended that the ratification of the lease by the agreement of August 20, 1926, executed by all of the persons having an interest in the lease, reaffirmed and validated those provisions in the lease granting to lessee the right to operate producing wells so long as oil or gas is produced and marketed therefrom. Appellants admit that the heirs of an estate may ratify not only voidable but also void acts of the administratrix of an estate. This principle has been applied specifically to the act of an administrator in leasing lands of a decedent. In 24 C. J., page 191, section 689, it is stated:

"The acquiescence of heirs or devisees, or their waiver of their rights, may operate to validate the acts of an executor or administrator in leasing the lands of decedent". (See, also, *Phillips* v. *Grubbs,* 112 Ark. 562 [167 S. W. 101], *Bessho* v. *Gen. Petroleum Corp.* 186 Cal. 133 [199 Pac. 22], and cases cited; *Ions* v. *Harbison,* 112 Cal. 260 [44 Pac. 572], *McKeeby* v. *City of Los Angeles,* 125 Cal. 639 [58 Pac. 263], and *The Texas Company* v. *Bank of America etc. Assn., supra.*)

It therefore must follow that if the original lease extended the term as to the "five-acre tracts" beyond the twenty-year period and "for so long as oil or gas is produced and marketed from such well" appellants have fully ratified the terms of the original lease and the judgment of the trial court

must be sustained. However, if the original lease, by its terms, intended that all rights of respondent therein terminated at the end of twenty years, there was nothing in the instrument dated August 20, 1926, that would or could extend the term thereof.

The only question then presented to us is, between the two possible constructions to be placed thereon, whether the interpretation given the lease by the trial court was reasonable and according to the agreement which the parties made for themselves, and was in accordance with the situation of the parties and the objects to be accomplished under the surrounding circumstances. (Sec. 1641, Civ. Code; 8 Cal. Jur. Supp., p. 672.) The arguments presented by both appellants and respondent are not without merit. An oil and gas lease for a definite and fixed term and "so long thereafter as oil and gas is produced therefrom" is one in common use. (*Dabney* v. *Edwards,* 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822]; *Scheel* v. *Harr,* 27 Cal. App. (2d) 345 [80 Pac. (2d) 1035].)

There can be no dispute as to certain facts. Originally there were two lessors to this lease, (1) Emma J. Curtin individually, and (2) Emma J. Curtin as administratrix of the estate of Erwin Bayha, deceased. The lease was executed by the two lessors as cotenants. The lessor Emma J. Curtin individually was under no statutory disability and could make a lease of indefinite duration as to her interest. She was bound by the terms of the lease if the lessee was given the right to operate producing wells for the life of the lease just as much as though she had made a separate lease. A cotenant can individually lease property for oil and gas purposes, and she is bound as to her interest in the whole. (*Earp* v. *Mid-Continent Petroleum Corporation,* 167 Okl. 86 [27 Pac. (2d) 855, 91 A. L. R. 188].) If we are to speculate as to the intention of the parties, we can assume in support of the judgment that the lease was drawn so that by its terms it granted the right to the lessee to retain producing wells after the twenty-year period on the theory that Mrs. Curtin in her individual capacity would be bound by the lease in this respect, and that upon distribution of the estate, a ratification of the lease would be obtained by all of the parties then interested in the lease so as to bind their interest as well as Mrs. Curtin's individual interest.

Pursuant to the provisions of the agreement of 1926, lessee commenced and drilled two wells on the demised premises to deeper oil sands. Those wells were drilled approximately twelve years prior to the termination of the twenty-year period. The acceptance of the performance under the 1926 agreement and of the royalties from the wells drilled pursuant to its provisions and the reliance of lessee upon the position of lessors is also significant as bearing on the intention of the parties. A circumstance in support of the judgment which appeals to us is the fact that the heirs signed the ratification agreement after the estate was distributed to them. Had the parties intended, originally, that the lease was to terminate for all purposes at the end of the twenty-year period, from the record before us, such a ratification would have been unnecessary. We must therefore presume that the ratification agreement was signed for some purpose. That purpose could only have been to ratify that portion of the lease, granting a term longer than twenty years with respect to wells in production, which was in excess of the powers of the administratrix at the time the original lease was executed. The agreement of August 20, 1926, provided that the original lease should remain in full force and effect. That agreement applied to all the terms of the original lease, and not merely to a part thereof. The lessors were then subject to no restriction limiting a lease to twenty years, and this later agreement clearly ratified and adopted the provision of the earlier lease relating to an extended term for holding portions of the land in connection with wells which continued to produce.

A further consideration is that in any event the provisions of the original lease are sufficiently uncertain to call for an interpretation thereof, the execution of the later agreement calls for an interpretation as to its meaning and effect as applied to and considered with the original lease, and it cannot be said that the two instruments, considered in the light of the facts, are not susceptible of the interpretation placed upon them by the court. Hence, we cannot disturb the decision. It was the province of the trial court to resolve doubtful language in the lease and to determine the meaning and effect of the subsequent agreement. (*Adams* v. *Petroleum Midway Co., Ltd., supra.*)

When the construction given an instrument by the trial court appears to be reasonable and consistent with the intent

of the parties making it, courts of appellate jurisdiction will not substitute another interpretation even though it seems equally tenable. (*Berdan* v. *Berdan,* 39 Cal. App. (2d) 478 [103 Pac. (2d) 622].)

For the reasons expressed the judgment is affirmed. The attempted appeal from the order denying the motion for new trial is dismissed (*Chichester* v. *Seymour,* 28 Cal. App. (2d) 696 [83 Pac. (2d) 301]).

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1941. Shenk, J., Houser, J., and Carter, J., voted for a hearing.