[Civ. No. 6578. First Appellate District, Division Two.—February 5, 1929.]

SANTA CRUZ PORTLAND CEMENT COMPANY (a Corporation), Appellant, v. SNOW MOUNTAIN WATER AND POWER COMPANY (a Corporation), Respondent; and Consolidated Cases.

Morrison, Hohfeld, Foerster, Shuman & Clark for Appellants.

Edgar C. Chapman, James A. Talbot and W. F. Howard, for Appellants.

R. P. Henshall for Certain Appellants.

Redman & Alexander and Redman, Alexander & Bacon for Appellant Fidelity & Deposit Company of Maryland.

Max Thelen, Benjamin C. Jones, Pillsbury, Madison & Sutro, and Thelen & Marrin for Respondent Snow Mountain Water and Power Co.

C. J. Goodell for Respondent W. A. Betchel.

BURROUGHS, J., *pro tem.*—These are consolidated mechanic's lien cases all arising out of the construction of the respondent Snow Mountain Water and Power Company's Scott Dam in Lake County. Said Snow Mountain Water

and Power Company will be hereinafter referred to as the Power Company.

A contract for the construction of said dam was entered into on December 15, 1919, between the Power Company, as owner, and the defendant W. A. Kraner, as contractor. In accordance with the provisions of section 1183 of the Code of Civil Procedure, a bond was entered into between said Kraner, as principal, and the appellant Fidelity and Deposit Company of Maryland, as surety. The contract, plans, and specifications, and the surety bond were all filed and recorded in the office of the county recorder as required by said section 1183, *supra*, before any work under the contract was performed. Kraner started work under the contract, established camp, built roads, hired and bought machinery and necessary supplies and continued the work of building said dam until the morning of July 1, 1921, when all work on the dam ceased. Certain controversies had theretofore arisen between the Power Company and Kraner, and one of the questions here presented is whether Kraner abandoned the contract.

In *Snow Mountain Water & Power Co.* v. *Kraner*, 191 Cal. 312 [216 Pac. 589], wherein the said defendant Kraner was appellant, the very question here presented was before the supreme court of this state for hearing and determination. The evidence passed upon in that appeal is substantially the same as presented here.

After a careful analysis of the law and the facts bearing upon the point presented, the supreme court held that Kraner abandoned said contract and that the Power Company was justified under the terms thereof in taking over the work of completing the dam. To set forth in this opinion the evidence would be a repetition of that contained in *Snow Mountain Water & Power Co.* v. *Kraner, supra,* and from which we would logically reach the same conclusion. We therefore adopt that opinion upon the question of abandonment as the opinion of this court and hold that Kraner abandoned his contract.

The trial court found that at the time Kraner abandoned the work under the contract there was no fund in the hands of the Power Company available for the payment of any of the lien claimants. Appellants attack this finding as not sustained by the evidence. The contract

price for all work, material and supplies for the erection of said dam is a lump sum of $1,122,350, with additional provisions in said contract for alterations or changes which might be ordered by the Power Company in accordance therewith. H. D. Pillsbury, vice-president of the Power Company, testified that at the time Kraner abandoned the contract he had been paid the sum of $884,938.75 for work, materials, and supplies furnished under the lump sum contract price. That he was paid for labor and materials which were furnished outside the lump sum price the additional sum ·of $182,020.91. Kraner admitted having received these sums from the Power Company. Witness J. B. Reddick, who was the resident engineer of the Power Company during the entire period of the construction of the dam, testified that when Kraner quit work on the dam he left unfinished within the lump sum contract price 15,461 yards of concrete unpoured, 2,700 cubic yards of excavation at the north end of the dam and between 1,500 and 2,000 yards at the south end; excavation for a cut-off wall under section 14 and filling of same with concrete; excavation for southern diversion wall; placing of sluice gateway and needle and butterfly valves on outlet pipe; construction of trash racks in front of gate; placing of doors and drainage tunnel; placing of impervious hydraulic fill to prevent the seepage of water under dam; placing of fill on downstream foundation of dam to protect foundation; removal of forms along crest of dam; filling of openings in dam; filling of recesses in upstream face of dam; removal of trestle and concrete bunkers and clearing the camp; removal of railroad track and construction equipment. Comparing the amount of work done by Kraner with the work left unperformed, the net result of the testimony of this witness was to the effect that the dam at the time Kraner abandoned work was 75 per cent completed, with possibly one or two per cent one way or the other. S. L. Shuffleton, an engineer of wide experience in the construction of hydroelectric and steam power plants, and also in the construction of concrete dams, testified in detail concerning the amount of work which Kraner had completed and the amount left unfinished, and by comparison he placed the dam as 78.2 per cent completed. It also appears from the evidence that had Kraner completed the portion of the dam yet to be completed, and .within the

line of the lump sum contract price, it would have cost him $245,961.41. As against this evidence Kraner testified that he was never paid more than 85 per cent of the amount earned by him monthly. He also testified that the total yardage of cement to be poured was 86,172 yards. That the contract price was $1,122,350, which would give a figure of thirteen dollars plus per cubic yard for concrete poured by him. Figuring on the basis of the testimony of this last witness, it is claimed by appellants that as Kraner poured, according to his own figures, 73,279 cubic yards of cement at the price of $13.025 per yard, he had earned $954,458.98, and having been paid only $884.938.75, there is still a balance due him in the hands of the Power Company of $69,520.23, which last-named sum is available for the satisfaction of the liens of appellants. The fallacy of this position becomes apparent upon reading the contract and the testimony of Reddick and Shuffleton. If the contract of Kraner with the Power Company was merely to pour the concrete, no doubt these figures would be a proper basis for the computation of the amount earned by Kraner, but the argument of the appellants fails to take into consideration there were some 52,000 cubic yards of excavation to be removed within the contract, and as heretofore stated in the testimony of witness Reddick, many other things to be performed beside the cement work itself. Under these circumstances the trial court was justified in accepting a figure of 78 per cent as the basis for its computation of the amount of work done by Kraner. (Sec. 1183, Code Civ. Proc.; *McDonald* v. *Hayes*, 132 Cal. 490 [64 Pac. 850]; *Hoffman-Marks Co.* v. *Spires*, 154 Cal. 111 [97 Pac. 152]; *Pacific Portland Cement Co.* v. *Hopkins*, 174 Cal. 251 [162 Pac. 1016].) Based upon this calculation, the finding of the court that there was no fund in the hands of the Power Company available for the payment of appellants' claims is fully sustained by the evidence. Appellants further claim that the Power Company was indebted to Kraner, the contractor, for work done and materials and supplies furnished during the months of May and June, 1921. This contention is based on the theory that the Power Company, prior to said time, had breached the contract and therefore all labor performed and all materials and supplies furnished by the contractor were not a part

of the contract. Having heretofore held that the contract was in full force and effect until abandoned by the contractor, the work, supplies, and materials furnished during said months were properly included in the lump sum contract price (*Snow Mountain Water & Power Co. v. Kraner, supra*), and had been paid for by the Power Company in accordance with the terms of the contract.

It is further contended by certain appellants that the finding of the trial court that their claims against Kraner had been paid, compromised, settled, and discharged, is without support in the evidence. This controversy arises out of the fact that the said appellants assigned their claims, with all rights thereunder, to the appellants Howard and Talbot, who were partners with Kraner in the construction of the Power Company's dam, and also indemnitors on the bond of their co-defendant, Fidelity and Deposit Company of Maryland. As we have already held that there was no fund in the hands of the Power Company available for the payment of these liens, this finding becomes immaterial. The only other party to the controversy who could be affected by the finding complained of would be the appellant Fidelity and Deposit Company of Maryland, but as Howard and Talbot were not only partners with Kraner in the contract, but were also indemnitors on the bond given by the surety company, no claim could be, nor do we understand is made, by said Howard and Talbot against the surety company. We therefore hold that it is unnecessary to decide the question here presented.

The court further found that certain of the claims now owned by Howard and Talbot were not of the class that entitle the holders to the benefit of the law relating to leins. In view of our previous holding that there is no fund in the hands of the Power Company for the payment of liens, and, further, as no judgment is sought by appellants against the surety company, the finding becomes immaterial.

The appellant Fidelity and Deposit Company of Maryland was the surety on the bond given by the contractor in accordance with the provisions of section 1183 of the Code of Civil Procedure. The court gave judgment against the contractor and said surety company in favor of the plaintiff W. A. Betchel in the sum of $7,973.26, with interest thereon

from the date of the judgment. The court also gave judgment against the contractor and said surety company in favor of the plaintiff Santa Cruz Portland Cement Company in the sum of $63,837.96, with interest thereon from the date of said judgment, and the said surety company appeals therefrom.

It is urged in support of the appeal that the court, having found that there was no lien existing in favor of Betchel and the Santa Cruz Portland Cement Company against the property of the Power Company, it was error to give judgment in their favor and against this appellant.

In *General Electric Co.* v. *American Bonding Co.*, 180 Cal. 675 [182 Pac. 444], it was held that a bond given by a contractor pursuant to section 1183 of the Code of Civil Procedure to secure payment of claims for labor and material to be furnished in the construction of a building and which is expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used on the work described in the building contract, and which also provides that any and all such persons shall have and are given a right of action to recover upon the bond against the principal and surety, or either of them, in any suit brought to foreclose mechanics' liens which may be filed by such persons or any of them, upon the property mentioned in the contract, or in a separate suit brought upon the bond, may be sued upon by laborers or materialmen without perfecting their claims by the filing of verified liens as required by section 1187 of said code. In *Fraters G. & P. Co.* v. *Southwestern C. Co.*, 200 Cal. 688 [254 Pac. 1097], in affirming the doctrine enunciated in *General Electric Co.* v. *American Bonding Co., supra,* the supreme court further held that a materialman may waive by agreement or otherwise his right to a lien without in any way impairing his right to proceed against the sureties upon the undertaking given in compliance with section 1183 of the Code of Civil Procedure. These cases, so far as we are advised, have never been reversed or modified and, in our opinion, are a complete answer to appellant's contention. Indeed, we understand that counsel for appellant concedes the force of these decisions, but earnestly contends that in deciding them the supreme court overlooked considerations which would pre-

clude the construction of the statute placed upon it by the court. However, under well-recognized principles, this court is bound by the decisions of the supreme court, and, therefore, without discussing the merits of counsel's contention, we hold that the point is not well taken.

The court entered judgment against the cross-defendants James A. Talbot and W. F. Howard and in favor of the plaintiffs W. A. Betchel and the Santa Cruz Portland Cement Company, said judgments being in the same amount as given by the trial court in favor of said last-named parties and against the Fidelity and Deposit Company of Maryland. Talbot and Howard have appealed therefrom. The relation of these appellants to this case may be summarized from the evidence as follows: They were partners with Kraner, the contractor, in the execution of the contract in building the Power Company's dam. They were indemnitors of the surety company on the bond given by the contractor Kraner under the provisions of section 1183 of the Code of Civil Procedure. After the commencement of twenty-three of the separate actions to enforce liens against the property of the Power Company, all of said actions being consolidated in this action, said appellants purchased the claims of said twenty-three lien claimants and have continued the actions in the name of the original parties and through the aid of counsel have vigorously prosecuted said claims both in the trial court and upon appeal herein. On their appeal from the judgment entered against them in favor of plaintiffs Betchel and the Santa Cruz Portland Cement Company they have appealed *in propria persona*. In support of this appeal they now urge that the cross-complaint upon which they were brought into court does not state facts sufficient to constitute a cause of action. The cross-complaint was filed by the said surety company and, after alleging the corporate capacity of this company, proceeds as follows:

"2. That at the time said Fidelity and Deposit Company of Maryland executed the bond or undertaking referred to in the complaint in the above entitled action, and as a part of the same transaction, and as a part consideration for the execution of said bond, said Fidelity and Deposit Company of Maryland made and entered into a contract in words and figures as follows:

" 'This agreement made the 20th day of December, A. D. 1919, between W. A. Kraner, W. F. Howard and James A. Talbot, parties of the first part, and Fidelity and Deposit Company of Maryland, party of the second part, witnesseth:

" 'Whereas, the second party has executed, or is about to execute, as surety, a bond in approximately the sum of five hundred fifty-two thousand seven hundred fifty-seven and 50/100 (552,757.50) dollars, running to the Snow Mountain Water and Power Company, guaranteeing the performance of a certain contract entered into by W. A. Kraner with the Snow Mountain Water and Power Company, for the construction of a concrete dam across the South Eel River at Gravelly Valley, Lake County, California, and

" 'Whereas, the parties of the first part are copartners in the performance of the said contract, which has been made and will be performed in the name of the said W. A. Kraner, but for the joint account of the parties of the first part, and

" 'Whereas, the party of the second part has executed, or is about to execute, said bond upon the application of the said indemnity of the said W. F. Howard and said James A. Talbot, and in reliance upon this agreement,

" 'Now, therefore, it is agreed by and between the parties hereto,—

" 'First: That in the event of any suit or legal proceedings being brought against the second party, as surety on said bond, the second party shall have the right to apply to the court in which such action is brought for an order making the first parties, parties defendant, both individually and as copartners, and said parties of the first part do hereby consent to the granting of such order by the court, and do agree to become such parties defendant; and in the event of any judgment being rendered against the parties of the second part in such action or actions, same judgment shall also be rendered against each of the parties of the first part, both individually and as copartners.

" 'Second: The party of the second part agrees that in the event of any suit or proceeding being brought against it, or in the event of any claims being made against it, arising out of the execution of said bond, it will co-operate with, and will assist the parties of the first part in settling said claims or in defending such suit or suits.

" 'In witness whereof, the parties hereto have caused these presents to be executed the day and year above stated.

" 'W. A. KRANER
" 'W. F. HOWARD
" 'JAMES A. TALBOT
" 'FIDELITY AND DEPOSIT COMPANY OF MARYLAND:
" 'By GUY LE ROY STEVICK, Attorney-in-fact.
" '(Seal)          Attest: PAUL M. NIPPERT, Agent.'

"3. That said agreement is still in full force and effect.

"Wherefore, Fidelity and Deposit Company of Maryland prays that plaintiff take nothing and further prays that in the event judgment shall be rendered against said Fidelity and Deposit Company of Maryland in this action such judgment shall also be rendered against the said W. A. Kraner, W. F. Howard and James A. Talbot, both individually and as copartners; and further prays that it be adjudged and decreed that said W. A. Kraner, W. F. Howard and James A. Talbot exonerate the Fidelity and Deposit Company of Maryland and hold it harmless from all obligation and liability in respect to the matters referred to in the complaint in the above entitled action."

Upon the filing of this cross-complaint the court made its order making these appellants parties to this action and they were served with a copy of the cross-complaint. They did not appear in the action so far as their relation thereto as indemnitors was in issue, but permitted their default to be entered. Conceding that standing alone and unaided the foregoing document is defective as a pleading, the agreement set forth therein was received in evidence on the trial of the action and by its terms these appellants consented that the court should make them parties to any action on the contract of suretyship and they also expressly agreed that any judgment entered against the surety company should be also entered against them both individually and as copartners. While neither party to this controversy has offered any authorities for or against the claim of appellants, it would seem logical that appellants should be bound by their own agreement. The document, whether it be held sufficient as a cross-complaint or not, gave notice to appellants that a suit was pending against the surety company. The complaint against the latter stated a cause of action on the contract of suretyship and after a trial, judgment was en-

tered against the surety. No just reason appears why these appellants should not be bound in accordance with the terms of their contract of indemnity.

There is no dispute that the agreement between Howard and Talbot on the one hand, and the surety company on the other, is a contract of indemnity. There can be no question that under the facts of this case a judgment rendered against the surety company could be used as the basis of an action by the latter against Howard and Talbot. (Civ. Code, sec. 2778; 13 Cal. Jur., sec. 15, p. 996.) Such being the case, we can conceive of no reason why the indemnitors may not by their contract agree, as they did agree in this case, to become parties to any action against their indemnitees, and that any judgment entered against the latter might also be entered against them. Under their agreement of indemnity they were made parties to the action by the order of the court. They were notified of the pendency of the action by service of the cross-complaint, and they suffered the case so far as they were concerned to go by default. They should not now be permitted to have the judgment set aside upon the plea that the cross-complaint was defective.

No good reason has been shown why the judgment should be disturbed, and it is therefore affirmed.

Nourse, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 5, 1929, and petitions by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, were denied by the supreme court on April 1, 1929.

All the Justices present concurred.