[Civ. No. 2947. Fourth Dist. Feb. 27, 1942.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Appellant, v. AMERICAN NATIONAL BANK OF SAN BERNARDINO (a National Banking Corporation), Respondent.

Philip T. Lyons and LeRoy B. Lorenz for Appellant.

R. Bruce Findlay for Respondent.

GRIFFIN, J.—In this action appellant, by its amended complaint, seeks an interpretation of the terms of a certain agreement, asks for an accounting based thereon, and in several separate money had and received counts prays for a recovery from respondent for the amount found due thereunder. Respondent, in its answer, admitted the execution of the agreement, denied appellant's interpretation thereof, and denied the necessity of an accounting or that it was indebted to appellant in the sum sought. By way of cross-

complaint it seeks a recovery from appellant in the sum of $4,700 principal, plus interest and costs of suit. Each party pleaded a bar to the other's causes of action by virtue of the statute of limitations. After the trial of the case the parties entered into a form of stipulation reciting in part: "... that the court may make its order vacating ... the order heretofore made ... referring this matter to ... a referee, for an accounting ... that the court shall now finally decide the issue, which was raised upon the trial ..." as to the proper interpretation of the agreement; that "if the court decides such issue in favor of the trustee bank, the court shall not order an accounting, but shall merely declare the rights of the parties under the said agreement with respect to an accounting." Thereupon the court made findings interpreting the agreement in accordance with the contentions of the respondent. It also found that plaintiff's causes of action for an accounting were not barred by the statute of limitations; that plaintiff was entitled to an accounting but under the stipulation it did not order an accounting or reference on the matter for such purpose "but will do so upon proper application therefor being hereafter made." It was further found that the cross-complainant was not entitled to a personal judgment against appellant herein for any deficiency but was compelled to obtain the repayment of any money due it from appellant from the funds or property of a certain trust.

As a conclusion of law the court determined that the cross-complainant was entitled "to judgment for the unpaid portion of any of its advances and interest; however, payable only from the property of said trust ... as may hereafter be determined upon an accounting."

The court then signed a form of judgment decreeing that plaintiff was "entitled to an accounting" under the interpretation given the contract by that court; that defendant was "authorized to reimburse itself for its advances" under the agreement as so interpreted; that the parties, or either of them, "upon proper further application being made by it therefor," were "entitled to an order of reference herein for the taking of such an accounting."

It appears from the evidence that during the year 1926, one Thomason instituted a campaign to build and sell houses and chicken units or equipment on parcels of land in a tract in the northern part of San Bernardino known as the Fishel-

ton Farms Poultry Colony. He approached appellant and made some kind of arrangements with it to furnish the building material for the improvements. About forty or fifty houses or units were begun under these arrangements when it was discovered that the "jobs" were going "sour." The project needed new finances. It became apparent then that without this new life blood the entire investment of the appellant was in grave jeopardy. Thomason and the appellant approached the respondent bank relative to these finances. The respondent agreed to advance the funds under certain conditions, one of which was that it should receive from the first funds derived from the sale of the houses and units its advances and interest. The disputed agreement was drawn for the purpose of reducing to writing the understanding of the parties. It reads in part as follows:

"This agreement, made . . . this 7th day of April, 1927, by and between HAYWARD LUMBER & INVESTMENT COMPANY, a corporation . . . as party of the first part, and AMERICAN NATIONAL BANK of San Bernardino, a corporation, . . . as party of the second part, and R. M. THOMASON . . . party of the third part, Witnesseth:

"Whereas, the party of the first part is engaged in the business of selling lumber and other building materials . . .

"Whereas, the party of the second part is engaged in the banking business . . .

"Whereas, the party of the third part is engaged in the development of a large tract of land . . .

"Whereas, the title to portions of said land is in different individuals and/or corporations, and it is the plan of third party, in connection with the development thereof, to secure purchasers for portions of said tract and to establish an escrow in connection therewith, and to pay through said escrow the balance due the present holder of the legal title to the portion of the property so sold . . .

"Whereas, third party also intends to make all arrangements for the construction of the houses and other improvements to be placed on the pieces so purchased, and in connection therewith third party intends to purchase materials for said improvements, provide the labor therefor, and attend to all matters in connection therewith; and,

"Whereas, third party desires to purchase the materials for said improvements to be erected from first party which are handled by it; and,

"Whereas, the second party is willing to provide the necessary funds covering the balance due for the releasing of the lots upon which the buildings are to be built and to pay the labor claims thereon;

"Now, therefore, it is agreed,

"First: That the necessary papers covering the remaining unpaid balance of the purchase price of each individual parcel be made between the purchaser thereof and the third party;

"Second: That the above mentioned papers in the form of a first and second deed of trust mentioned heretofore be filed for record and recorded prior to the furnishing of any material or before any work of any kind is commenced;

"Third: That the first and second deeds of trust heretofore mentioned shall be assigned absolutely to the second party by the said third party to be held in trust to sell and dispose of pursuant to the provisions of this agreement;

"Fourth: The third party agrees to purchase from the first party and the first party agrees to sell to the third party all of the materials for use in the houses and . . .

"Fifth: The second party agrees to advance sufficient moneys to secure the conveyance to the purchaser of the lot upon which buildings are to be situated so that title may be shown in the name of the purchaser subject to the two deeds of trust heretofore mentioned;

"Sixth: The second party agrees to advance the necessary funds as the building progresses to pay the labor necessary in the completion of the building; . . .

"Eighth: The second party will exercise reasonable efforts to sell the said deeds of trust and the notes secured thereby, but agrees not to sell any notes secured by first deeds of trust for less than ninety-eight per cent (98%) of its face value . . . without the consent of the first party and shall apply the proceeds received therefrom in the following manner and with priorities as follows:

"[a] Return to the second party any moneys advanced covering the release of the lot . . .

"[b] Return to the second party all moneys advanced for labor together with interest thereon at eight per cent, or any other expenses in connection therewith;

"[c] Payment to the first party of any and all remaining funds to and until such time as their bill for materials is

paid in full together with interest at eight per cent from completion;

"[d] The return to the second party as trustee under the trust agreement drawn between third party in favor of various colonists and creditors of any and all remaining funds;

"Ninth: The first party in consideration of the covenants and agreements herein expressed agrees to waive any and all lien rights and to accept in lieu thereof the beneficial interest in the first and second deeds of trust herein mentioned and in accordance with the terms and provisions of this agreement;..."

It is not clear who actually drew the agreement, but it is clear that it was not drawn by the respondent bank. It was written on stationery of the appellant and presented to the bank for its approval. The bank advanced funds under the agreement and handled each of the six deals in the trust. On June 8, 1928, the bank submitted to appellant a statement showing that it had advanced to the trust a total of $14,074.62, and that it had repaid to itself the sum of $8,500 from the general funds of the trust, leaving a balance of $5,574.62 payable to it. The record discloses that this method of repayment to itself by the bank was not questioned by appellant until April 21, 1931. This was after the beginning of the depression and the continuing deflation of property values. Then for the first time appellant advanced the contention that the respondent could repay itself for any advances it made to complete "Unit A" only from the funds derived from the sale of "Unit A," not from "Unit B" or "Unit C" or the general funds of the trust.

The only issue herein at the present time is the proper interpretation of the contract and particularly paragraph eighth thereof. The trial court found in favor of the bank's interpretation, i. e., that under the agreement the bank was authorized to repay itself for its advances, from the general funds of the trust, and not from each particular job, for the advances made to each job.

It appears from the contract itself and other evidence produced, that the trial court was justified in adopting the interpretation placed upon the contract by respondent. The deals of Thomason and appellant had gone "sour." They needed more money and the benefit of the services of an organization to handle their affairs orderly. The bank agreed to handle the trust without compensation and in addition

thereto to loan the necessary funds at 8 per cent interest. It had nothing to lose by refusing to enter into the agreement. Section 1866 of the Code of Civil Procedure provides that ''When a statute or instrument is equally susceptible of two interpretations, one in favor of natural right, and the other against it, the former is to be adopted.'' Our attention has not been called to any case where a bank has agreed to loan money to any person at a specified rate of interest and provide for the repayment of the loan and interest only in case the borrower makes a profit on the transaction. One would naturally expect the entire loan and interest to be paid from the profits or collections in the general trust, without regard to any particular transaction included within it, in the absence of some agreement to the contrary.

■ Appellant contends that the respondent bank was required, under the terms of the contract, to keep and render separate accounts on each of the several construction jobs, share its loss thereon, if any, and that it may not pool or consolidate all of the jobs in one general account, so as to set off losses in one or more jobs against gains or profits in others. In this connection, it argues that because the bank originally entered a new escrow for each job, that it thereby showed that it at that time interpreted the agreement as appellant now contends it should be interpreted. The agreement in question created a trust and not an escrow. The bank, for the purpose of better handling the payment of bills due on each house and out-building under the trust, entered a separate account for each. Such an arrangement is a logical one for handling the affairs of each improvement during the process of its construction. To contend that because the jobs were separated for that purpose and that purpose only, the bank thereby admitted the contention of appellant, is not justified. In June, 1928, the respondent showed that it considered the contract as one involving the whole and not each separate job, for in defendant's exhibit ''C'', the bank informed appellant that it had applied $8,500 upon its advances. Those advances were set up therein under schedules 2 and 4 in one lump sum of $14,074.62. There was no segregation. The $8,500 came from the general funds of the trust. On June 7, 1928, the respondent presented appellant with a statement which clearly showed and indicated the bank's interpretation of the contract. This statement should have shown appellant, if it did not already know it,

what respondent believed regarding the interpretation of the contract. In any event, on April 21, 1931, appellant knew of respondent's attitude because, on that date, a letter was written by appellant to respondent questioning the right of the bank to pay itself out of the general fund. The action herein was started approximately six years later. The question immediately arises: "Why did appellant wait for such a long period before asserting its intrepretation of the contract?" While there was evidence of delay or evasion on the part of the respondent, more than eleven years elapsed before appellant attempted to enforce its interpretation of the agreement. Appellant should have moved with reasonable dispatch thereafter to enforce the trust as it interpreted it. Such a delay has been held to amount to laches. (*Baxter* v. *King,* 96 Cal. App. 415 [274 Pac. 620].) However, we are convinced that the time-honored rule must here be applied, i.e., when the construction given an instrument by the trial court appears to be reasonable and consistent with the intent of the parties making it, courts of appellate jurisdiction will not substitute another interpretation even though it seems equally tenable. (*Tide Water Associated Oil Co.* v. *Curtin,* 41 Cal. App. (2d) 884, 895 [107 Pac. (2d) 945].) The judgment of the trial court cannot be disturbed.

In view of the conclusion reached, it becomes unnecessary to consider certain other points which are raised.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 27, 1942.