[Civ. No. 3764. Third Appellate District.—September 28, 1929.]

AUSTIN McFADDEN, Respondent, v. LICK PIER COM-
PANY, a Copartnership, etc., et al., Appellants.

Edw. F. Wehrle and George L. Reimbold for Appellants.

Henry G. Bodkin for Respondent.

PLUMMER, J.—This action was instituted by the plain-
tiff to obtain a declaratory judgment determining the re-
spective rights of the parties hereto under the terms and

conditions of a lease entered into between said parties on the first day of February, 1924. On and prior to the date referred to the defendants were the owners of certain pier rights at Venice and Santa Monica in the state of California. Negotiations were carried on between the respective parties resulting in the execution of the lease just referred to, whereby it was provided, among other things, that the defendants should erect a pier of a certain size and dimension, and that the plaintiff would thereafter erect upon said pier a dance-hall according to plans and specifications set forth in a certain blue-print referred to in the lease. The lease was to continue until the first day of September, 1939. The complaint sets forth the completion of the pier by the defendants and the erection of a dance-hall thereon by the plaintiff at an expense of $120,000. The court makes no finding as to the cost of the dance-hall, but the answer of the defendants admits the construction of the dance-hall and the value thereof up to any sum less than $120,000. The defendants filed a cross-complaint asking for a declaratory judgment according to their interpretation of the lease. The plaintiff had judgment, and the defendants appeal.

The provisions of the lease in controversy in this action are paragraphs indicated as "A," "C," "E" and "K." Paragraph "I" is not involved but is necessary to be set forth in order to obtain a full understanding of the agreement. The paragraphs referred to read as follows:

"(A) That the lessee will, at his own cost and expense, erect upon said space the dance hall hereinbefore referred to, and have the same completed and ready for operation, and begin the operation thereof not later than sixty (60) days after foundation for dance hall is completed, said dance hall to be erected, maintained and operated by said lessee at his own cost and expense, and to be kept at all times neat, clean and attractive, and that the same shall, whenever the same is necessary for its proper appearance, be repainted and kept in good condition and repair at all times, and to be operated at least ten (10) months of each year.

"(C) It is further covenanted and agreed that the lessee covenants and agrees to maintain and operate said dance hall continuously for the term of this agreement, and to furnish an orchestra or other music equal to that used or

furnished by any other dance hall in the cities of Santa Monica or Venice, California, and to pay all expenses connected therewith; it being expressly understood that notwithstanding any provisions in this lease contained as to the participation of the owner in or to any of the receipts, income or revenue of said business, that the same shall in no sense or wise be construed a partnership, and that the only interest of the owner in said business is the specified percentage or amount to be paid, and that solely as rental for the use and occupation of said premises.

"(E) It is further agreed that the lessee shall at all times carry good and sufficient liability insurance for the payment of all damages accruing to any person, partnership or corporation on account of, growing out of, or connected with the building, erection, conduct or operation of said dance hall, and to pay, and keep fully paid, the premiums upon all such insurance. And it is further agreed that in the event that the lessee shall fail to do or make any of the repairs by said lessee to be made, or to furnish or pay for any insurance or other thing to be paid for or furnished by the lessee hereunder, that then and in that event the owner shall have the right to furnish and pay for the same (but nothing herein shall be construed as imposing any obligation upon the owner so to do), and that any amount so paid out shall be repaid to the owner as so much additional rent at the next rent paying period hereunder, and for said and every purpose the payment of said percentages, or any part thereof, shall constitute the payment of rent.

"(I) It is further covenanted and agreed that in consideration of this lease, and the rights and privileges herein granted, the lessee agrees to erect and maintain at his own cost and expense, and without any cost or expense to the owner, the aforesaid dance hall, and to pay the owner as rental for the space herein leased, let and demised, the following amounts, to-wit: For and during the period of time until the lessee has been fully reimbursed out of the profits of the conduct of said dance hall, and every business therein conducted, the owner shall receive fifteen (15%) per cent of the gross receipts derived from the operations of every kind, including sales, rents, privileges and all income derived in or about said dance hall; and for the purpose of the foregoing, 'profits' are hereby defined and declared to be the

gross income less the actual cost of operation; provided, however, that no person shall draw or receive more than seventy-five ($75.00) dollars per week out of the receipts until the said building is paid for as aforesaid; and it is further agreed that after said lessee shall have been fully reimbursed on account of the erection and installation of said building, that thereafter the owner shall receive as rental for the remainder of said term, twenty-five (25%) per cent of the gross receipts from every source, less cost of the orchestra and except that derived from the sale of merchandise, drinks and any article sold on said premises, and as to such articles, merchandise, drinks, etc., the owner shall at all times receive fifteen (15%) per cent of the gross sales price.

"Said percentages aforesaid shall be paid daily at the close of business, or at such other time as may be mutually agreed upon by the parties hereto; and it is further agreed that the owner shall have the right at all times to hire and keep employed a cashier to take in and account for the receipts of said business, and that the lessee shall pay the salary of such cashier, not to exceed $25.00 per week.

"(K) It is agreed that in the event (but not otherwise) the lessee shall keep and perform each, every and all of the covenants herein contained to be performed by said lessee, and shall pay at the time and in the manner herein provided all of said rentals, that then and in that event, and at the expiration of said term, the lessee may remove all improvements made or placed upon said premises by said lessee, but that the said removal shall be done in a good and workmanlike manner without injury to the premises, and that no part of said or any improvements placed thereon by the lessee shall be removed until all rentals have been fully paid, and the owner is hereby given and granted a first and prior lien upon everything brought, placed or permitted on said pier by the lessee for any rent due or to become due hereunder, and that any property which the lessee is entitled to remove hereunder shall be removed on or before the first day of December, 1939, and that any property, buildings, fixtures or other property left by the lessee upon said premises after said date, shall be and forever remain the property of said owner."

The principal contention of the appellants is that they have a lien upon all furniture, musical instruments, stock of goods, and such like property that may be brought into the dance-hall during the continuance of the lease, and that upon the failure of the plaintiff to continuously operate the dance-hall for a period of ten months during each and every year, then and in that case the defendants have a right to operate the same and charge the expenses of such operation as a personal liability against the plaintiff.

The court found that under the terms of the lease the defendants were not entitled to any lien whatsoever upon the furniture, equipment, pianos, lighting apparatus, music-stands, or stock of goods, or any part of such property placed in said dance-hall by plaintiff, for any rent due or to become due under the terms of the lease; that the lien of the defendants was limited to the permanent improvements placed on said pier by the plaintiff. The court further found that the plaintiff had the right to remove any of the aforesaid personal property as distinguished from the improvements placed thereon by the plaintiff, and that the defendants had no right to interfere with the removal of such personal property. The court further found that if the plaintiff failed to furnish the necessary employees and assistants, pay the taxes, etc., and operate the dance-hall for a period of ten months of each year, the defendants in that event were not authorized or empowered under said lease to furnish the same, or any part thereof, or charge the same, or any part thereof, against the plaintiff as so much additional rent. The court further found that no personal liability could be charged against the plaintiff in the event that the income of operating the property was not sufficient to pay the expenses thereof. The court further found that there was no provision in the lease authorizing the defendants to operate the ballroom or dance-hall in the event that the plaintiff failed so to do. The court further found that the plaintiff had no right to remove any permanent improvements placed on said pier prior to December 1, 1939, and then only in the event that the plaintiff, or his successors in interest, had faithfully carried out all the terms and conditions of the lease. While the court did not so find, it may be here stated that paragraph "K" of the lease provided the conditions under which the improvements placed

upon the pier by the plaintiff might be removed on or before the first day of December, 1939, and that if not so removed, the buildings, fixtures, etc., remaining upon the premises should be and forever remain the property of the owners.

As the remedies which the defendants might have as against the plaintiff by way of an action for damages if the plaintiff failed to operate the lease, as provided for, are not involved in this action, and were not passed upon by the court, though mentioned by counsel, we do not deem it necessary to give any attention to such questions. Nor does it seem necessary to follow counsel in the consideration of the various cases having to do with the interpretation of contracts, as the provisions of the Civil Code, beginning with section 1635 and ending with section 1661, cover all that is involved in this action, save and except as to one word, and that is the word "improvements." In 31 C. J. 307 we find the following: "The term 'improvements' was a broad signification; improvements, or, as they are commonly called 'betterments,' may be designated as the improvements on realty which are more extensive than ordinary repairs, and enhance, in a substantial degree, the value of the property. The word 'improvement' is sometimes used with reference to personal property but ordinarily it is employed in the plural form and with reference to real property only." And in the notes on page 308 of said volume appears the following pertinent statement: "Where the word 'improvements' is used, without any language defining or extending its ordinary meaning, the courts, with substantial uniformity, have held that it relates to improvements to the realty and not to articles in the nature of chattels such as trade fixtures." (Citing a number of cases.)

The case of *Pasadena University Co.* v. *Los Angeles County,* 190 Cal. 786 [214 Pac. 868, 869], setting forth a rule of construction, is applicable here. It is said in that case: "It is the rule of construction' that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. (36 Cyc. 1119; 25 R. C. L. 996, 997; 2 Lewis' Sutherland's Statutory Construction, 803, 804.)'' In reading the lease in question we find no lan-

guage which changes any of the general rules of construction or gives to any of the words used therein a different meaning from that ordinarily attached. With this in view, we will first consider the main contention of the appellants relative to the lien upon personal property.

Paragraph "K," after setting forth, as herein shown, certain particulars, contains the following: "It is agreed that in the event, but not otherwise, the lessee shall keep and perform each, every and all of the covenants herein contained to be performed by said lessee, and shall pay, at the time and in the manner herein provided, all of said rentals, that then and in that event, and at the expiration of said term, the lessee may remove all improvements made or placed upon said premises by said lessee, but that the said removal shall be done in a good and workmanlike manner, without injury to the premises, and that no part of said improvements placed thereon by the lessee shall be removed until all rentals have been fully paid, and the owner is hereby given and guaranteed a first and prior lien upon everything brought, placed or permitted on said pier by said lessee for any rent due, or to become due hereunder, and that any property which the lessee is entitled to remove hereunder shall be removed on or before the 1st day of December, 1939," etc. It is this provision of the lease upon which the appellants base their claim to a lien upon personal property. The language of this paragraph is so plain that a simple reading thereof leads to the conclusion that the appellants' contention is untenable. In the very inception of the part of said paragraph relied upon by appellants, the subject of improvements and the removal of improvements is made the basis of all that is therein contained. It is covenanted and agreed that if the lessee shall have performed all and singular the requirements and conditions of the lease, then he should have the right to remove all the improvements, in a good and workmanlike manner. The following language does not refer to any personal property that might be used by the plaintiff in the dance-hall or ballroom, or in the operation thereof, but only refers to everything brought, placed or permitted on said pier. The word "everything" is a general word following the particular statement of improvements placed upon the premises by the lessee, which the lessee was entitled to remove.

It may be said that the character of the personal property referred to in the lease shows that it was of a changing character. Much of it was to be bought and sold, with proceeds thereof accounted for daily. Nor is there any prohibition in the lease relative to the removal of personal property. The subject under consideration, and the portion of paragraph "K" upon which the appellants rely, has to do with the removal of improvements. In this particular it should be borne in mind that what we have said in relation to the cost of the dance-hall or ballroom has a significant bearing. In the event that the terms and conditions of the lease were not complied with, the plaintiff was obligated to leave upon the premises a building costing, as we have said, any sum of money less than the alleged sum of $120,000. That is, the improvement to be placed upon the premises by the plaintiff within the contemplation of the parties at the date of the execution of the lease, and which was thereafter placed upon said premises by the plaintiff, which the parties certainly had in mind when using that term and giving the right to the defendants to hold as security for the performance by the plaintiff of the obligations assumed by him.

A reading of paragraph "E" shows conclusively that the finding of the trial court in relation thereto is correct. Under certain conditions, as provided in said paragraph, the owners may perform particular acts, and the expenses shall be charged as so much additional rent. There is nothing in any paragraph of the lease authorizing the appellants to perform any acts in the event of a failure of the plaintiff so to do and charge the expenses thereof as a personal liability against the plaintiff.

It is not intended, by any language used herein, to express any opinion as to what remedies, if any, the appellants might have by way of damages against the plaintiff for failure on his part to comply with the conditions of the lease.

The judgment is affirmed.

Finch, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 28, 1929, and a

petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1929.