[Civ. No. 1942. Fourth Appellate District.—November 13, 1936.]

B. F. CULLEY, Respondent, v. LESTER L. COCHRAN, Constable, etc., Appellant; J. EDGAR ROSS, Intervener.

Lester L. Cochran, *in pro. per.*, for Appellant.

Hickcox & Trude for Respondent.

JENNINGS, J.—Plaintiff instituted this action to recover from the defendant, Constable of Westmoreland Township, Imperial County, the value of 24 tons of hay which it was alleged the plaintiff owned and the defendant had wrongfully converted. Defendant's answer denied that plaintiff owned the hay and that defendant had taken it from plaintiff's possession. Trial of the action resulted in the rendition of a judgment in plaintiff's favor from which this appeal has been taken.

Appellant presents three contentions in his effort to secure reversal of the judgment. These contentions are: First, that a certain written instrument received in evidence during the trial of the action is a lease contract; second, that the evidence showed that appellant in taking the hay acted under written instructions to attach the same in another action and without knowledge that any one other than the defendant in the attachment action claimed to be the owner of the hay or entitled to its possession; third, that the evidence was insufficient to sustain the trial court's finding that appellant converted 24 tons and 340 pounds of hay. It is apparent that all of the aforesaid contentions in effect resolve themselves into an attack upon the trial court's findings on the familiar ground of evidentiary insufficiency.

Examination of the transcript on appeal demonstrates that the following facts were developed by the evidence submitted to the trial court: Approximately 24 tons of baled hay were seized by appellant as constable under a writ of attachment issued by a justice of the peace in an action entitled *Ross*

v. *Orr,* filed in said justice court. Appellant in attaching the hay acted in accordance with written instructions given him by the plaintiff in said action. At the time the hay was attached it was taken from a certain ranch known as the Goodsen ranch and the defendants in said attachment suit were then residing in a dwelling house located on said ranch. The ranch had been leased by the owner to respondent herein and the latter had entered into a written contract with respect to it with the Orrs to which contract more explicit reference will hereafter be made. The hay which was attached was grown on the Goodsen ranch and all expense incident to its cultivation and harvesting including the cost of irrigation was borne by respondent.

The written contract to which reference has been made was entered into between respondent and the Orrs, defendants in the attachment action, on July 30, 1927. This instrument, after making reference to a prior contract between respondent and Dan Orr with respect to the maintenance of a dairy herd by Dan Orr on a ranch operated by respondent, contains a lengthy description of a certain transaction which had occurred between Orr and his wife and respondent whereby the latter sold to the former 36 dairy cows and other personal property and the buyers thereupon executed two promissory notes secured by chattel mortgages on the entire dairy herd owned by them. The agreement then recites that the prior contract had been canceled and that the Orrs would move their dairy herd and equipment to the Goodsen ranch and would there maintain the herd consisting of approximately 78 milk cows on the terms and conditions specified in the present contract. Certain mutual promises of the parties to the agreement are then set out. By them the Orrs agreed that they would maintain their dairy herd on the Goodsen ranch and would deliver the milk produced by said herd to any creamery in Imperial county designated by respondent for the latter's credit and account and that payment for the milk thus delivered should be made directly to respondent. Respondent on his part agreed that he would furnish the Goodsen ranch to the Orrs for their use in maintaining thereon the dairy herd until July 15, 1929, unless he should sooner be prevented therefrom through no fault of his own and that he would disburse the proceeds received by him monthly from the sale of milk in the pay-

ment of certain designated charges. The first of these charges is a monthly payment of $200 and interest on the first chattel mortgage note executed by the Orrs. The second charge specified is the payment to respondent himself of the sum of $166.67, which is expressly stated to be the monthly rental of the Goodsen ranch which respondent as lessee of said ranch is obliged to pay to the owner thereof. The third item is the sum of $175 to be paid to the Orrs. It is then provided that any amount remaining after payment of the above-mentioned items shall be applied on the interest due and payable on the second chattel mortgage note.

The uncontradicted evidence further disclosed that on March 16, 1928, the Orrs revoked the order which they had given to the creamery to pay over to respondent the proceeds of milk sales, and on April 12, 1928, the dairy herd which was being maintained on the Goodsen ranch was taken in a claim and delivery action by the mortgagee in the first chattel mortgage and sold. It was also shown that after the cattle were removed the Orrs did no work on the ranch either by way of cultivating the alfalfa crop which was then growing thereon or in irrigating the crop or in cleaning the irrigating ditches although they continued to reside in the dwelling house located on the ranch. It also appeared that on April 20, 1928, respondent made written demand on the Orrs to surrender possession of the Goodsen ranch to him and to quit the premises within three days and on May 4, 1928, he instituted an action in unlawful detainer against them wherein he alleged that the reasonable rental value of the ranch was $166.67 per month and demanded restitution of the premises together with judgment for two months' rent at the above-mentioned rate and that such rental be trebled. It further appeared that after trial of the action thus brought respondent was permitted to amend his original complaint to conform to the evidence and that it was alleged in the amended pleading that after April 20, 1928, respondent had secured possession of all the premises except the farm buildings which the Orrs continued to occupy. It was further alleged that the reasonable rental value of that part of the premises which the Orrs continued to occupy was $25 per month and the prayer of the pleading was for judgment in the amount of $50 for two months' rental and that such sum be trebled.

A study of the record on appeal impels the conclusion that the trial court interpreted the written agreement which was entered into between respondent and the Orrs on July 30, 1927, as not constituting an agreement of lease. In thus interpreting the agreement we are constrained to declare that the court did not err. It is apparent that the principal object of the agreement was the maintenance by the Orrs of a specified herd of dairy cattle to the end that the proceeds derived from the sale of milk produced by the herd should be delivered to respondent to be disbursed by him in the payment of designated charges. The particular clause of the agreement upon which appellant especially relies as evidentiary support for his contention that the trial court erroneously construed the agreement as not being a contract of lease is the following: "Said Culley agrees to furnish said Goodsen ranch to said Orrs for their use in caring for and maintaining same, and in producing feed thereon, and in keeping and maintaining said dairy herd thereon as aforesaid, to July 15th, 1929 (unless said Culley is prevented through no fault of his own)." With respect to this language it is proper to observe, first, that no apt words indicative of an intention to demise the premises appear therein and, second, that no fixed term is clearly designated. It is also proper to note that there is not at any place in the agreement a promise or covenant on the part of the Orrs to pay any specified rental for the premises. In this connection, it may be observed that one of the charges which the respondent agreed that he would pay monthly from the proceeds which he should receive from the sale of milk was one of $166.67 to himself "for money payable by said Culley to Goodsen for rent of said Goodsen ranch". Appellant argues that this peculiar provision in reality amounts to a covenant by the Orrs to pay the designated sum as monthly rental for the premises. While it may be conceded that the language would conceivably bear this interpretation it must also be borne in mind that it was the duty of the trial court to discover the intent of the parties not from some particular language of the instrument dissociated from other provisions of the agreement but from all the language employed in the contract and all of the terms thereof. It is apparent that the agreement was not artistically drawn and that its true meaning is, in many

respects, ambiguous and doubtful. It is not unreasonable to construe it as an agreement by respondent to give the Orrs the use of the land as licensees for the specified purpose of maintaining thereon the dairy herd which was the principal object of the contract. The trial court evidently so interpreted the agreement and, as indicated, it is our conclusion that, taking the agreement in its entirety, such interpretation is not so unreasonable that we feel justified in substituting therefor the interpretation for which appellant contends. (*Adams* v. *Petroleum Midway Co., Ltd.,* 205 Cal. 221 [270 Pac. 668] ; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576, 582 [300 Pac. 34] ; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal. App. 641, 648 [250 Pac. 710] ; *Whepley Oil Co.* v. *Associated Oil Cb.,* 6 Cal. App. (2d) 94, 101 [44 Pac. (2d) 670].)

Our conclusion that the trial court's interpretation of the above-mentioned written agreement as not constituting a lease contract may not, under the circumstances, be disturbed on this appeal very largely disposes of appellant's second contention. ▉ This contention is that, since appellant in taking the hay did so by virtue of a writ of attachment which had issued in another action and under written instructions to attach the hay without knowledge that anyone other than the defendant in the attachment suit was making any claim to the hay, he could not be guilty of a wrongful taking. In this regard, it may properly be observed that not only do we entertain the opinion that the trial court correctly interpreted the written agreement as a mere licensing contract but that certain additional facts which were developed by uncontradicted evidence demonstrate that appellant's contention of an innocent taking is untenable. The evidence showed, for example, that after the cattle were removed from the ranch on April 12, 1928, the Orrs did no work on the ranch and in particular that they did nothing with respect to the cultivation of the hay then growing on the premises and that from that time, at least, respondent assumed the burden of cleaning the irrigating ditches and of irrigating the crop which respondent finally harvested. There was also evidence before the court which showed that the Orrs who continued to reside in the house on the Goodsen ranch made no claim of ownership or right to the hay and made no objection to any of the work that was done on the ranch by

respondent. We think that this evidence warranted the trial court in concluding that the Orrs, prior to appellant's seizure of the hay, had abandoned any right that they might have had to use any part of the ranch premises other than the house which they continued to occupy and that the taking of the hay by appellant was a wrongful taking from respondent who was entitled to its possession.

Appellant's third contention of evidentiary insufficiency to sustain the trial court's finding that the quantity of hay taken amounted to 24 tons is likewise entirely untenable. Examination of the record shows that evidence was submitted which tended to show that the quantity of hay seized by appellant was 24 tons. Some evidence was produced by appellant which tended to show that the quantity seized did not exceed 22 tons. No rule of appellate procedure is more firmly established than that which precludes disturbance of a finding which is based on conflicting evidence. It may be observed that the finding as to the quantity of hay taken is that it amounted to 230 pounds in excess of 24 tons. No evidence was produced which tended to show that the quantity exceeded 24 tons by any amount. However, it is also obvious that the amount of $384, which respondent was permitted to recover, is for 24 tons at the value of $16 per ton which was the market value which the hay was shown to have had at the time of seizure. It is clear, therefore, that no account was taken of the excess of 230 pounds and any reference to this excess in the findings may be disregarded as harmless error.

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1937.