[Civ. No. 3061. Fourth Dist. Apr. 8, 1943.]

FRESNO IRRIGATION DISTRICT, Appellant, v. SIDNEY T. SMITH et al., Respondents.

L. B. Hayhurst and L. Nelson Hayhurst for Appellant.

Wild & Carlson and R. F. Maxwell for Respondents.

BARNARD, P. J.—This is an action to quiet title to a portion of two sections of land in Fresno County, being a strip 150 feet wide the center line of which begins at the southeast corner of one of the sections and runs northwesterly to the northwest corner of the other section.

In 1910, the Fresno Canal and Irrigation Company, which then owned the land, deeded these two sections to the defendant Smith excepting therefrom this 150-foot strip across both sections. Smith and his successors in interest fenced both sections, including the strip in dispute, paid all of the taxes thereon and remained in possession up to the trial of the action.

In February, 1917, the Fresno Canal & Land Company, as successor to the Fresno Canal and Irrigation Company, deeded its properties to the Fresno Canal and Land Corporation, this 150-foot strip not being specifically referred to but passing by an omnibus clause conveying "All properties . . . now owned by the Grantor."

On May 16, 1921, the Fresno Canal and Land Corporation deeded a part of its properties to the Fresno Irrigation District, which had been organized the year before. The strip here in question, which lies some miles outside the boundaries of the plaintiff district, was not specifically mentioned in this deed but is claimed by the plaintiff under an omnibus provision therein.

On October 8, 1921, the Fresno Canal and Land Corporation conveyed this 150-foot strip by grant deed to the defendant Smith for a consideration of $50. A certificate of title showing title to this strip in Smith was issued by the Fresno County Abstract Company on October 10, 1921. It is conceded that over a period of about eighteen years the plaintiff district made no claim to this strip of land and that no one connected with this district knew that the district might have

any interest in the property until about two years before this action was tried, which was in February, 1941, at which time the defendant Smith sought to obtain a quitclaim deed from the district. In this action, which followed, Smith and his successors in interest set up in their answers that they were the owners of the disputed strip of land; that the Fresno Canal and Land Corporation was the owner thereof on October 8, 1921; that they purchased the strip for a valuable consideration and the same was deeded to them on October 8, 1921; and that at that time they had no notice of any claim to the property on the part of the plaintiff. As further defenses it was set out that it was not the purpose or intention of either the grantor or the grantee in the deed of May 16, 1921, to convey the disputed strip to the plaintiff; that Smith and his successors have been in possession of the property since October 8, 1921, with no notice of the plaintiff's claims and have paid all taxes assessed against the property; and with the further pleading of laches and estoppel against the plaintiff.

The court found that the plaintiff is not and has not at any time been the owner of the disputed strip of land; that the Fresno Canal and Land Corporation appeared of record as the owner thereof on October 8, 1921; that on that date the defendant Smith, believing said corporation to be the owner of the land, purchased the same in fee for a valuable consideration and received a grant deed dated October 8, 1921, which was recorded on October 10, 1921; that Smith, at or before the time of said conveyance had no notice, actual or constructive, of any claim of the plaintiff affecting said land; that at the time of the delivery of the deed of May 16, 1921, by the Fresno Canal and Land Corporation to this plaintiff it was not the purpose or intention of either the grantor or grantee that said deed should convey the disputed property to the plaintiff; that on October 8, 1921, Fresno Canal and Land Corporation was and for many years had been the owner of this property; that on that date the defendant Smith purchased the same and entered into possession thereof and that ever since he and his successors have been in adverse, peaceful, exclusive, open, notorious, continuous and uninterrupted possession and occupation thereof for a period of more than eighteen years, with no notice of any claim on the part of the plaintiff, until this action was commenced, and that during all of said time they have paid all taxes and assessments levied against said property; that the plaintiff should have known of the claim of de-

fendants for more than eighteen years prior to the commencement of this action; that the plaintiff, after such knowledge, permitted and allowed the defendants to expend money in good faith in reliance on the validity of their claim to said property without giving notice to the defendant of its claim until this action was filed; that many of the witnesses who were familiar with the facts in this connection have since deceased; and that during all of said period of time this property was not dedicated or devoted to any public use whatever. A judgment was entered that the plaintiff take nothing by this action and in favor of the defendants, and the plaintiff has appealed therefrom.

The first question raised is as to whether the court correctly construed the deed of May 16, 1921, whereby the Fresno Canal and Land Corporation deeded a part of its properties to the appellant. The resolutions passed by the stockholders and by the board of directors of the grantor corporation, authorize the execution and delivery of a deed conveying to the plaintiff district "the property, rights and franchises of this Corporation which are specifically described in" this deed. This deed starts out with a recitation that it is a grant of "all that property of Fresno Canal and Land Corporation which is more specifically described as follows:" The deed then contains four subdivisions. Subdivision I conveys eight specifically described parcels of land which do not include the land in dispute. Five of these are small parcels containing from a quarter of an acre to 3.62 acres, several of them being described as lying along certain ditches. One contains 55 acres, another is that part of a certain lot lying north of a certain canal, and the eighth is certain lots in the city of Fresno. Subdivision II conveys "All the following described canals, ditches and laterals . . . constituting a portion of or used in connection with Fresno Canal and Land Corporation's irrigation system." Then follows specific descriptions of 64 canals and ditches. Subdivision III conveys four specifically described telephone lines. Then follows Subdivision IV, which is material here and which reads in part as follows:

"Also, the entire irrigation system of Fresno Canal and Land Corporation including, in addition to the foregoing tracts and parcels of land, canals, ditches and laterals, and telephone lines, all other tracts and parcels of land, canals, ditches, and laterals, and telephone lines, together with all dams, headgates, weirs, flumes, aqueducts, structures, drops, checks, reservoirs,

rights of way, reservoir embankments, water rights, rights to the use of water, privileges, franchises and easements, options and rights and property and rights secured and to be secured thereunder, pumps, pipe, machinery, tools, furniture, books, records and maps, including also the Fresno Canal and Land Corporation's entire right, title and interest in and to all appropriations, filings, rights of way and other property and rights in connection with the so-called Pine Flat Project, and including also all other property and rights of Fresno Canal and Land Corporation, real, personal or mixed, tangible or intangible, corporeal or incorporeal, wherever located, subject, however to the following exceptions, to wit:''

Here follows seven numbered exceptions. The first six of these exceptions relate to the Laguna de Tache Grant irrigation system and water rights, a half interest in a weir in Kings River used jointly by the grantor and the Consolidated Canal Company, the headworks and gates of the Consolidated Canal Company, certain rights in the Lone Tree Channel ditch, certain water rights in connection with lands outside the boundaries of Fresno Irrigation District, and all moneys and accounts receivable, including water rentals due to the grantor in the operation of its canal system. The seventh exception gives the grantor the right to use any of the books, maps and records conveyed in Subdivision IV insofar as they relate to any of the properties owned or possessed by the Consolidated Canal Company or retained by the grantor.

The appellant contends that since the land in dispute was not mentioned in these exceptions title thereto passed to the appellant under the broad provisions of Subdivision IV of this deed, as above quoted, which purport to convey all other tracts and parcels of land and all other property and rights wherever located. It relies on *Pettigrew* v. *Dobbelaar*, 63 Cal. 396 and similar cases, in which it has been held that deeds are sufficient which merely describe the land conveyed as ''all of the land owned'' by the grantor. While this is the rule where the deed contains no words which limit the application of the general words, a different rule is sometimes applied in the construction of deeds where such general words follow the expression of a particular subject-matter which may have the effect of limiting the general words used. Such a rule was applied in *McFadden* v. *Lick Pier Co.*, 101 Cal.App. 12 [281 P. 429], a case not dissimilar in principle to the one now before us. In that case, the court said:

" 'It is the rule of construction that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.' . . . In the very inception of the part of said paragraph relied upon by appellants, the subject of improvements and the removal of improvements is made the basis of all that is therein contained. . . . The word 'everything' is a general word following the particular statement of improvements placed upon the premises by the lessee, which the lessee was entitled to remove.''

In *Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474 [19 P.2d 785], it is said:

"A court must look at the contract as a whole and give to each particular clause thereof the modification or limitation or qualification which it is evident from the other parts of the contract the parties intended.''

If it had been the intention of the parties, by the deed of May 16, 1921, to convey all properties owned by the grantor with certain exceptions, it would have been a simple thing to have included in the deed a subdivision so stating, as was the situation in the cases relied upon by the appellant. Instead of doing that here, this deed starts out by stating that it conveys all property of the grantor "which is more specifically described as follows:'' This limitation narrows the effect of the deed, and it clearly appears from the deed itself that the grantor was conveying only a portion of its properties to the grantee and that it was retaining other properties which were very substantial in nature. After thus specifically limiting the effect of the further provisions of the deed the next three subdivisions thereof convey certain specific parcels of land which would seem to be largely, if not entirely, useful in connection with the operation of the irrigation system which was being transferred to the grantee, together with certain canals, ditches, and telephone lines which are specifically described. After making these specific conveyances the deed, in its fourth subdivision, purports to convey the entire irrigation system of the grantor which is further described as including (in addition to the parcels of land, canals and ditches, etc. which had been previously conveyed) all other parcels of land, canals, ditches, etc.; all rights in the Pine Flat project; and all other property and rights, real, personal or mixed, wherever located, subject to the exceptions which followed. All of Subdivision IV, down

to the exceptions, is in one sentence without an intervening period. The thing conveyed is expressly said to be the entire irrigation system, and the several words "including" which follow in the same sentence should reasonably be interpreted as relating to the things which were a part of that system, which is the only thing conveyed in that subdivision of the deed.

The only thing Subdivision IV purports to convey is the particular irrigation system which the appellant was purchasing, the major portion of which had already been specifically conveyed in the prior subdivisions of the deed. Not only should this fact not be ignored but since the previous portions of the deed had conveyed the main parts of that irrigation system and since Subdivision IV goes on to convey "Also, the entire irrigation system" of the grantor, and then goes on to state that this includes parcels of land, canals, ditches, structures, rights of way, water rights and many other things which would naturally be a part of an irrigation system, but many of which things had previously been specifically conveyed in the prior portions of the deed, it seems reasonable to believe that Subdivision IV was intended to cover all those other portions of that irrigation system which seemed too numerous to mention specifically, and that it was intended thereby to fully cover by general language, and to include, all possible parts of this system and the property used in connection with the same, including even the rights in the Pine Flat project which might be appropriate and valuable to the system at some time in the future when the development of that project made these rights available for use, and including finally, all interests and rights, no matter how indefinite or whether real or personal, tangible or intangible, in the various ditches and laterals, structures, rights of way, water rights, easements and options, and in any and all other property which was a part of this irrigation system thus being conveyed in its entirety. The final clause of the omnibus provision seems, from the wording of the instrument, to have been intended as a catchall phrase to cover any and all property and rights and any partial or mixed interests which were a part of the irrigation system conveyed, and which might not be fully covered by the rather full but still general list of properties which precedes it.

That Subdivision IV was intended to cover only property which normally should be considered as a part of this irrigation system which is expressly conveyed in its entirety is further

indicated because the property listed in the latter part of Subdivision IV as being excepted from the conveyance is all property which would naturally be otherwise considered as a part of the property of an operating irrigation system, it being thus specially provided that regardless of the purpose first expressed in the subdivision to convey an entire irrigation system and in spite of the later broad enumeration of the component parts of that system which were to pass to the grantee, the particular rights and properties named in the exceptions should not be included in the property conveyed.

Taking the deed as a whole, and with due consideration to the language used, we think it appears that the construction placed thereon by the trial court is a reasonable one. ▆ Under such circumstances another construction, even though it might reasonably have been adopted, may not be substituted by an appellate court. (*Evans* v. *Citizens N. T. & S. Bank*, 29 Cal. App.2d 133 [84 P.2d 218] ; *Culley* v. *Cochran*, 17 Cal.App.2d 498 [62 P.2d 168] ; *Swerdfeger* v. *United Acceptance Corp.*, 9 Cal.App.2d 590 [50 P.2d 818].)

▆ We think, moreover, that the extraneous evidence upon the question of intention is sufficient to support the court's finding to the effect that the parties to this deed did not intend that the title to the land in dispute should pass to the appellant. While the appellant concedes that the land in dispute was never used as a part of the irrigation system of the Fresno Canal and Land Corporation, it is argued that all of the direct evidence in the record supports the conclusion that the parties intended that this disputed land should be included in the conveyance. The managing engineer of the appellant district testified that there was very little discussion as to the property that was to be transferred to the appellant, and that most of the discussion took place with reference to whether or not the Pine Flat interests should be included; that finally, the spokesman for the grantor closed the discussion by stating that these interests would be included in the transfer and then went on to say that even the pens and pencils and the desk would be included. One of the only two original directors of the appellant district who were still living testified that a question arose about whether the Pine Flat project should be included in the deed, which held up the negotiations for a time; that this was settled; and that "as to what properties generally would be transferred . . . the statement was made that the Fresno Irrigation District would acquire all the assets and rights of the

Fresno Canal and Land Corporation with the exception of some stipulated reservations in the deed." The only other living member of the original board of directors of the appellant district testified that he was present at the meeting when the deal was consummated; that the question came up as to what property the Fresno Irrigation District was to get; that the fixing of the purchase price was "a good deal like horse trading;" that "then the question came up as to what was to be turned over to the Fresno Irrigation District and the main point was the question as to the filings and whatever rights there were in the reservoir site of the Pine Flat project;" and that, finally, the spokesman for the grantor announced that they would sell for the stipulated price everything that the grantor had except their water rights and physical property in connection with the Consolidated district, the Laguna district and the Lone Tree Channel, which were outside the boundaries of the Fresno Irrigation District.

On the other hand, there is evidence that in drawing up the deed in question several lists of properties were used, one of which was drawn up shortly before this sale for the purpose of being used in connection with the application to the Railroad Commission for a change of rates and none of which included the land here in dispute. The managing engineer of the appellant district testified that in the negotiations for this sale the grantor corporation furnished them large maps of the entire situation that "became a part of the properties that were turned over to us," that from these maps it was easy to follow the various canals and branches enumerated in the deed, and that "and then in the end of the thing, the designation of things that were eliminated in the sale." He then spoke of the telephone lines mentioned in the deed and when asked whether those telephone lines were privately owned and used only "by the Irrigation District" he replied: "Yes. And in Paragraph 4 of the deed, there is a clause making—comprehending the entire irrigation system of the Fresno Canal & Land Corporation." He also testified that this 150-foot strip was not specifically mentioned at the time the deal was consummated. The chief engineer for the grantor corporation testified that he had never known that this disputed property was included in the conveyance and that "I remember that the omnibus clause was put in the deed and that was put there, for instance, to cover the right to take over these branch ditches."

58

■ The subsequent acts of the parties, which disclose the interpretation placed upon an instrument by the parties themselves, is an important element which may be considered by the trial court. (*Gramer* v. *City of Sacramento,* 2 Cal.2d 432 [41 P.2d 543].) It rather clearly appears that the grantor in this deed did not regard this disputed property as having been conveyed to the appellant as, about five months later, it sold and conveyed the property by grant deed to one of the respondents. While the appellant had at least constructive notice of this transfer it made no objection thereto and asserted no claim to that land for more than eighteen years. It also appears in the evidence that at the time this conveyance was made to the appellant the grantor corporation also owned other lands outside the appellant district which it later sold to private parties, and it does not appear that any objection or claim thereto was ever made by the appellant, although these lands were not mentioned in any exception in the deed.

■ The appellant district was organized shortly before the date of this deed for the purpose of taking over the irrigation system described in this coveyance. It may reasonably be inferred from all of the evidence, including the small amount of discussion that was had with reference to the particular properties that were to be conveyed, that the officers of the appellant district were interested in securing a conveyance of everything that went to make up this irrigation district and that would be useful to the operation thereof, and that they had little, if any, interest in any assets or properties outside of the district that might be owned by the grantor corporation, other than those which were usable in connection with the irrigation system. The land in dispute was not only outside of the boundaries of the appellant district but there is evidence that because of the lay of the land this property could never be irrigated from the canals of the appellant district and that for any possible irrigation thereof the water would have to be supplied from those water rights and operative properties which were retained by the grantor corporation. There is some evidence that when the two sections containing this strip of land were sold to the respondent Smith in 1910, the strip in question was reserved from that deed because it was then thought that this strip might be used for a ditch to bring water from one of the canals in connection with which the rights were reserved by the grantor in the deed of May 16, 1921. The then secretary of the Fresno Canal and Irrigation Company testified that

when Smith came in to buy these two sections in 1910 there was a conversation between Smith and the officers of the company expressing the idea that he was to pay for all of the land, that the company was to retain this right of way for a ditch in case they got water, and that if they did not get water the company was to deed the 150-foot strip to Smith.

The remarks relied upon by the appellant as being direct evidence of an intention to include this disputed land in the conveyance made not only disclose that there was little discussion with reference to any specific property, and no discussion at all with reference to this particular property, but they were made in connection with discussions as to whether or not the grantor's rights in the Pine Flat project should be included in the conveyance. In view of the indefinite nature of this evidence with respect to the question of intention, with some conflicting evidence, with rather strong evidence of general circumstances, and with inferences which might reasonably be drawn therefrom, we think the extrinsic evidence on the question of the intention of the parties not only supports the finding made in that connection but confirms and supports the findings and conclusions of the court with respect to the construction that should be placed upon this deed.

■ Probably the judgment appealed from could also be sustained on the theory of adverse possession, although this is not necessary under the views above expressed. This issue was pleaded and the court, upon ample evidence, found all of the essential facts in favor of the respondents and as a conclusion of law found that the respondents have a good and valid title to the property in dispute by adverse possession and occupation. The appellant argues that since it is a public corporation title to any of its property could not be acquired by adverse possession. A number of cases are cited in support of this rule. The property involved in the cases cited was, respectively, tide lands, property deeded in trust for the purpose of holding agricultural fairs, property deeded for a drain and continuously so used, public commons, lands reserved for school purposes, a public street and the right to use certain ditches. In *Richert* v. *City of San Diego*, 109 Cal.App. 548 [293 P. 673], this court stated the general rule: "Where land held by the state or any of its subdivisions has been actually reserved for or dedicated to some specific public use there can be no adverse holding thereof which can give title to the adverse claimant." After thus stating the general rule it pointed out a well recog-

nized exception as follows: "The law is likewise clear that if land held by the state or any of its subdivisions is neither reserved for nor dedicated to some public use and may be alienated by its owner, title may be wrested from it by adverse possession." The land here in question had never been actually reserved for or dedicated to any public use, no reason appears why the appellant, if it owned the land, could not have sold it at any time, and no reason has been advanced why the principles of this exception to the general rule are not here applicable.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.