[Civ. No. 17312.   Second Dist., Div. Two.   Feb. 9, 1950.]

MANUEL M. ORTIZ et al., Respondents, v. PACIFIC STATES PROPERTIES, INC. (a Corporation) et al., Defendants; A. F. EWALD, Appellant.

Robt. E. Rosskopf for Appellant.

Miller, Beck & Stillwell for Respondents.

WILSON, J.—Defendant Ewald has appealed from a judgment in favor of plaintiffs quieting title to real property, plaintiffs' title being based on adverse possession for more than five years. (Code Civ. Proc., §§ 324, 325.*) Mr. Gil,

---

*Section 324: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied and no other, is deemed to have been held adversely."

Section 325: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.

2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land."

predecessor of plaintiffs in the title, testified that in 1939 he had an oral agreement with Mr. Bustamente and was buying the property from him. Later he testified he was buying it from Mrs. Bustamente and paid her part of the purchase price. He completed his payments in 1944 and received a deed from Juan Bustamente.

Gil went into possession of the property in March, 1939, and immediately rented it to Mrs. Acedo who occupied the premises until May, 1941. Upon her removing from the property Gil rented it to Mrs. Macon, who remained there until April, 1946, when plaintiffs moved into and resided in the house on the property until the date of trial. Both Mrs. Acedo and Mrs. Macon paid rent to Gil.

Defendant did not object to the evidence of Gil's conversation with Mr. Bustamente but did object to the conversation with Mrs. Bustamente and also to introduction of the deed. The objections were overruled and the evidence was received subject to a motion to strike. Such motion was not made and the objection is therefore waived. While the deed might be considered as furnishing a basis of title, plaintiffs do not rest their claim of ownership of the property upon the deed or upon any color of title but assert ownership solely through adverse possession. Hence the evidence was harmless even though the objection had been well taken, a question not necessary to be decided.

Five elements are necessary to be proved by a claimant in order to establish title by adverse possession: (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner; (2) possession must be hostile to the owner's title; (3) the holder must claim the property as his own, either under color of title or claim of right; (4) possession must be continuous and uninterrupted for five years; (5) the possessor must pay all taxes levied and assessed upon the property during the five-year period. (*West* v. *Evans*, 29 Cal.2d 414, 417 [175 P.2d 219] and cases cited.)

Plaintiffs and Gil, their predecessor in interest, were in possession of the property by actual occupation continuously for five years prior to the commencement of the action. The property consists of two 25-foot lots, at about the center of which there was a house 25 feet wide with a driveway along the side of the house. The land was fenced on two sides and the rear. Gil went into possession of the property, rented it and collected the rents until he sold it to plaintiffs who occupied it after the last tenant departed. Mrs. Acedo and

Mrs. Macon corroborated Gil's testimony as to their payment of rent and each one testified that during her occupancy no one made any claim to the property. This constituted actual, open, notorious, continuous, uninterrupted and exclusive possession, with a claim of right, hostile to the true title, and was such constructive notice as would place the owner on inquiry, satisfying the requirements stated in *Yuba River Sand Co.* v. *City of Marysville,* 78 .Cal.App.2d 421, 429 [177 P.2d 642]. ▉ To constitute a hostile claim there need not be open aggression or combat, neither need a notice to the owner be given other than the claimant's occupancy.

The property was sold to the state in 1932 for nonpayment of the taxes of 1931. Defendant contends that since the state was the owner of the property plaintiffs could not have acquired title by adverse possession. ▉ Where land is held by the state or any of its subdivisions and has been actually reserved for or dedicated to any specific public use no adverse holding thereof will give title to the adverse claimant, but "if land held by the state or any of its subdivisions is neither reserved for nor dedicated to some public use and may be alienated by its owner, title may be wrested from it by adverse possession." (*Henry Cowell Lime & Cement Co.* v. *State,* 18 Cal.2d 169, 172 [114 P.2d 331]; *Fresno Irr. Dist.* v. *Smith,* 58 Cal.App.2d 48, 60 [136 P.2d 382]; *Richert* v. *City of San Diego,* 109 Cal.App. 548, 553-4 [293 P. 673] and cases cited.)

To defendant's fatuous argument that because Gil was a real estate broker he might have been renting the property for the real owner and not for himself it need only be said that there is no evidence to this effect and nothing from which such an inference may be drawn. On the contrary, Gil's evidence was that he bought the property, paid the purchase price, took possession of it and collected the rents for himself. ▉ Defendant maintains that there has not been a showing of the payment of taxes for a period of five years preceding the commencement of the action on March 29, 1948. On December 4, 1944, plaintiff's grantor paid the taxes for the fiscal year 1944-45 and in October, 1945, redeemed the property from delinquent taxes for the fiscal years 1931 to 1943, inclusive. Thereafter plaintiffs paid before delinquency the taxes levied and assessed for the fiscal years 1945, 1946 and 1947. Since plaintiffs' payment of taxes for current years was sufficient to comply with section 325 of the Code of Civil Procedure defendant's contention that the redemption of taxes does not constitute payment within the meaning of that

section need not be discussed. Taxes levied as of the first Monday in March, 1944, and all taxes levied and assessed thereafter had been paid as above noted. We need consider only the taxes for the tax year 1948-49. The law in force during that year required (1) that property be assessed to the persons owning or claiming it on the first Monday in March (Rev. & Tax. Code, § 405); (2) that the assessment roll be completed on or before the first Monday of July (Rev. & Tax. Code, § 616); (3) that the taxes be levied by the board of supervisors not later than the first day of September. (Gov. Code, § 29120.) The action having been commenced on March 29, 1948, the five-year period of continuous adverse possession began on March 29, 1943. The tax for the year 1948-49 had been "assessed" as of the first Monday of March, 1948, or on some date prior to the first Monday in July (§§ 405 and 616, *supra*), but had not been "levied" at the time the action was commenced since the date on which that act could have taken place had not then arrived. The levy could not have been made until after the assessor had completed his assessment and delivered the assessment roll to the clerk of the board of supervisors. (Rev. & Tax. Code, § 617.) Since the taxes for the year 1948-49 had not been levied they could not have been paid by plaintiffs, and that fact did not prevent the perfection of their title by adverse possession. In *Allen* v. *McKay & Co.*, 120 Cal. 332, 334 [52 P. 828], this point is determined adversely to defendant's contention. The court held that a fair construction of section 325 of the Code of Civil Procedure is that "the word 'levied' refers to the act of the board of supervisors in making the levy, and the word 'assessed' refers to the act of the assessor in making the assessment. . . . [B]oth the assessment and levy must be made while the occupant is in possession, or he is not called upon to pay the tax." The court further stated that although such construction might result in the creation of an adverse title by the payment of taxes for only four years, a compliance with the demands of the statute is all that can be asked and the important question is what those demands are and not the results to follow from a compliance with them.

In *Brown* v. *Clark*, 89 Cal. 196 [26 P. 801], the action was brought by the record owner to quiet title against the claimant by adverse possession. It was commenced on March 25, 1889, hence in order to establish the defendant's title his adverse possession must have dated from not later than March 25, 1884. The plaintiff had paid the taxes assessed as of

the first Monday in March, 1883, and the defendant had paid all taxes assessed in each year as of the first Monday of March, 1884 to 1888, inclusive. The plaintiff contended that his payment of the taxes assessed in 1883 was a payment of all taxes due to June 30, 1884, the end of the fiscal year, that the defendant could not claim the benefit of the statute until July 1, 1884, and that his payment of the 1884 assessment was not sufficient to cover the five-year period. The court rejected the plaintiff's contention, holding that the plaintiff's payment of the taxes levied in 1883 did not bar the defendant's title and that the latter's payment dated from the first Monday in March, 1884, more than five years prior to the commencement of the action.

■ If the person claiming title by adverse possession pays all taxes "levied and assessed" against the land during his term of continuous occupation he can maintain his possession against the person who would otherwise be the owner of the land. ■ The commencement of adverse possession is not required to coincide with the beginning or end of a fiscal year and payment by the record owner of the property of taxes which were levied, assessed and paid during the calendar year preceding the adverse occupation will not postpone the running of the time of adverse possession until the end of the fiscal year. There is nothing in the statute stating directly for how many years taxes shall be paid, the only requirement being that taxes be paid which have been "levied and assessed" during the statutory period. (*Brown* v. *Clark, supra.*) An adverse claimant to real property will not be denied acquisition of title by adverse possession for nonpayment of taxes when taxes have not been both levied and assessed for one or more years during his occupancy. (*Allen* v. *Allen,* 159 Cal. 197, 200 [113 P. 160] ; *City of Santa Clara* v. *Ivancovich,* 47 Cal.App.2d 502, 511 [118 P.2d 303] ; *Brown* v. *Bachelder,* 214 Cal. 753, 757 [7 P.2d 1027].)

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 24, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1950.